WHITMORE v. UTAH FUEL CO. et al.

No. 1983.   Decided April 28, 1913 (131 Pac. 907).

WATERS AND WATER COURSES—DIVERSION—DAMAGES.   An appropriator and owner of all the water of a creek and of springs which fed the creek, who had conveyed it to his home ranch by a main and a branch pipe line, where it was used for irrigation of a garden and orchard, and for culinary, domestic, and stock raising purposes, though having no market value because there were no sales by reason of its scarcity, in his action for a wrongful diversion was entitled to pecuniary damages measured upon a consideration of the different uses to which he had applied it, not including the value of the pipe line, rendered useless by the diversion, its value being represented in the enhanced value of the water by being carried therein in a continuous flow from the springs to the ranch, unimpaired in quantity or quality.

APPEAL from District Court, Seventh District; *Hon. Ferdinand Erickson*, Judge.

Action by George C. Whitmore against Utah Fuel Company and the Rio Grande Western Railway Company.

Judgment for plaintiff.   Plaintiff appeals.

REMANDED, WITH DIRECTIONS TO VACATE THE JUDGMENT, AND TO REOPEN AND RETRY THE CASE ON THE ISSUE OF DAMAGES.

*A. R. Barnes,* and *E. V. Higgins* for appellant.

*VanCott, Allison & Riter, M. P. Braffet,* and *E. A. Wedgwood* for respondents.

McCARTY, C. J.

Respondents have filed a petition for a rehearing. We have given the questions presented careful consideration, and are of the opinion that the decision heretofore filed in the cause on this appeal should in some particulars be modified. In view of the fact that counsel, both for appellant and respondents, have filed briefs in which they have ably and elaborately discussed the questions presented, we have decided to make the necessary changes in the opinion without reopening the case for oral argument. The cause will be ruled and determined by this opinion only.

The complaint contains two causes of action. The case has been tried twice, and this is the second appeal taken by the plaintiff. The first trial resulted in favor of defendants, and a decree was entered dismissing plaintiff's complaint. This decree was appealed from, and the decision of the lower court was affirmed as to the second cause of action, but was reversed and remanded as to the first cause of action. (*Whitmore v. Fuel Co.,* 26 Utah, 488, 73 Pac. 764.) In the opinion remanding the cause this court said:

"Plaintiff is entitled to recover from respondents whatever damages the evidence shows he has sustained which are the proximate and direct result of the diversion of the waters of the lower group of springs above referred to. It appears from the record that the source of supply of water for Grassy Trail Creek has been destroyed, and that it would be impossible for the defendants to return the water to plaintiff; hence he is entitled to recover whatever the evidence shows to be the value thereof."

The cause was remanded to the district court, with directions to enter judgment in favor of plaintiff for the amount of damages he had sustained by the diversion of the water. Proviso was made in the order for the reopening of the

case, and the introduction by the parties of further evidence
on this issue in the event that the lower court was unable
to determine the amount of damages so sustained by the
plaintiff from the evidence then before it. Pursuant to
such order, the cause was reopened as to the first cause of ac-
tion, and both plaintiff and defendants were permitted to
introduce additional testimony. When the cause was called
for the taking of further evidence, the plaintiff was per-
mitted to file an amended complaint. In the complaint as
amended plaintiff, so far as material here, alleges: That
in the year 1884 he had completed the diversion and appro-
priation of all of the water of Grassy Trail Creek in Sun-
nyside Canyon, including all springs tributary to said creek,
and was the owner thereof; that said water was appropriated,
and used "for irrigation, culinary, domestic and stock rais-
ing purposes;" that prior to 1884 he had acquired title to
320 acres of land which lies along the bed of the canyon
through which said stream runs; that the water so diverted
and appropriated was used by plaintiff to irrigate about 200
acres of the land mentioned, and for domestic, culinary, and
and stock raising purposes; that in August, 1899, he con-
structed a six-inch pipe line three miles in length capable
of carrying all the water of said creek, and that he con-
structed a branch pipe line 1400 feet in length from the
main line, and thereby obtained water from springs that
fed the original Grassy Trail Creek; that in the year 1899
the Utah Fuel Company began prospecting for coal upon
land, to which it claimed title, adjoining said Grassy Trail
Creek and later opened extensive coal mines therein and
established a village at Sunnyside of 1500 people there-
on; that said village created a large demand for water, and
that said company by running tunnels and making excava-
tions underneath said branch pipe line prevented the water
of said springs from entering into the pipe line, and forced
the water to run out of its mine at a level below the pipe
line, so that the same could never run therein or reach the
lands and premises of plaintiff; that said company also dug
a well higher up the stream of Grassy Trail Creek so as

to obtain the water of the springs which were running out of the branch pipe line, and deprived the plaintiff of the use thereof; that by means of the well and the diversion of the water of said creek plaintiff is without water to irrigate his garden, his lucerne, and other vegetables, or to use for culinary, domestic, or stock raising purposes; "that the country adjacent to said lands and said creek for many miles is extremely arid, and that there are no streams from the mountains or any source of supply of water other than said Grassy Trail Creek within many miles thereof, except Price River, which is at an elevation much less than the lands of this plaintiff and of said Grassy Trail Creek; that this plaintiff at the time of such appropriation was, and for many years had been, engaged in stock raising, and that he has been so engaged ever since said appropriation, and still is; that prior to 1899 this plaintiff had ranged his cattle in the valleys and on the mountains within range distance from his said lands; . . . that the said lands hereinbefore described were used as a home ranch for the conduct of his said stock raising business;" that prior to the date last mentioned he had erected large and expensive corrals for the preservation of his stock and had built a dwelling house and bunk houses for the accommodation of his employees; that the value of said farm with the water rights appurtenant thereto, together with the enterprises connected therewith and dependent thereon, is at least $200,000; that the defendants by means of the well aforesaid and the other acts of diversion hereinbefore mentioned have destroyed the water rights of the plaintiff, rendered his branch pipe line valueless, and ruined his farm, to his damage in the sum of $20,000; that, if said defendants are permitted to divert said waters and to continue the said injury, plaintiff will be damaged thereby to the extent of $150,000.

Plaintiff prayed "judgment that the court award proper compensation due to him for diversion of the water heretofore made or that shall be made prior to the time that a decree in this case shall enter judgment therefor in favor of the plaintiff, and in case it shall be found that said water,

so diverted as hereinbefore alleged, cannot be returned to the pipe line of this plaintiff, and that this plaintiff is permanently deprived thereof by the wrongful acts of the said defendants, or either of them, that then and in that case the court award proper compensation to this plaintiff from the said defendants for the wrongs and injuries complained of, and render judgment against the said defendants, and each of them, for the damages caused thereby, as hereinbefore set out."

Defendants, in their answer, admitted the construction by plaintiff of the pipe lines mentioned, admitted that they and their predecessors in interest had opened extensive coal mines near Grassy Trail Creek, and that a considerable number of persons (employees of the defendants) live near said mines, but denied that they diverted or attempted to divert water from said creek in any way or for any purpose, denied that plaintiff's pipe line took water from springs that he had appropriated, and denied all other allegations of the complaint upon which plaintiff relies for a recovery. For a detailed statement of the facts out of which this controversy arose, we refer to the former opinion of this court in the case, reported in 26 Utah, 488, 73 Pac. 764.

Much evidence bearing on the amount of damages sustained by plaintiff because of the diversion of the water of Grassy Trail Creek by the defendants was introduced by both plaintiff and defendants. The court found that plaintiff had been damaged in the sum of $3475, and rendered judgment in his favor for that amount. The transcripts of the evidence taken at both hearings or trials are incorporated in and form a part of the bill of exceptions on this appeal.

Appellant in his assignment of errors assails the ruling of the court rejecting certain evidence offered by him on the question of damages, and in admitting certain evidence offered by defendants on that issue; and also challenges the findings of the court regarding the amount of damages suffered.

The findings on the question of damages, so far as material here, are as follows:

"(1) The defendants by the acts set forth in the original findings of fact (referring to the findings of fact made by the court on the first trial) . . . have diverted from the lower group of springs described in the pleadings herein a quantity of water equivalent to one-third of a cubic foot per second of time; that the said quantity of water was and is capable of irrigating twenty-five acres of plaintiff's land; . . . that the value of said water so diverted by defendants is $1875.

"(2) That prior to the diversion of the said water by the defendants the plaintiff had constructed a pipe line together with laterals for the purpose of conveying the said water to his land; . . . that by reason of the diversion of said water the said pipe line and laterals have been and are rendered entirely valueless; that the value of the pipe line and laterals was and is $1600."

Counsel for appellant earnestly contend that the finding of fact wherein the court holds that the quantity of water diverted by defendants from Grassy Trail Creek was equivalent to one-third of a cubic foot per second of time is not only unsupported by, but is contrary to, the evidence. The contention made is that the court, under the evidence, should have found that defendants diverted three-fourths of a second foot. The record in this case is voluminous. The testimony alone covers over 1500 ordinary pages of typewriting. While we shall make a few brief quotations from the testimony to clearly illustrate the questions involved, we shall not attempt to set out the evidence either in detail or in condensed form. We do not deem an extended statement of the evidence necessary to a clear understanding of the question presented. Appellant testified, but he is the only witness who so testified, that the volume of water diverted by respondents from Grassy Trail Creek was from three-fourths to one second foot. The evidence, without conflict, shows that the carrying capacity of the branch pipe line through which the water in question flowed to appellant's ranch before the diversion complained of took place was .343 of a second foot, which is a trifle only in excess of

one-third of a second foot. Independent, however, of the undisputed fact of the limited capacity of the pipe line, the great weight of the evidence tends to show that the amount of water diverted by respondents did not exceed the amount found by the court, and much evidence introduced by appellant tends to support the finding made by the court. Therefore this finding, in so far as it relates to the quantity or volume of the water diverted by respondents, must be upheld. In arriving at the amount of damages appellant is entitled to recover for the water diverted, the court first found —and there is evidence to support the finding—that the water diverted by respondents was capable of irrigating twenty-five acres of appellant's land, and then evidently adopted as the measure of damages the difference between the value of twenty-five acres of appellant's land with sufficient water to irrigate it and the value of the land without the water. And there is evidence in the record tending to show that the difference between the value of the land with and without water is seventy-five dollars per acre. In other words, damages awarded appellant for the loss of water was a sum which the court found to be equivalent to the depreciation in value of twenty-five acres of irrigated land by having the water taken permanently therefrom. The court in ruling on an objection interposed by respondents to evidence offered for the purpose of showing the value of water to appellant for any and all purposes announced the rule by which the amount of damage suffered by appellant should be determined as follows:

"I can't think of any better theory or any better way of determining the damage sustained by plaintiff here than to find out what that land was actually worth at the time when he was deprived of this water, and then what it was worth after being deprived of that water." The cause was tried and determined upon the theory thus announced by the court.

The record shows that appellant was engaged in the business of raising cattle and horses, and that the farm or ranch in question was maintained and worked by him in connection with and auxiliary or subsidiary to his principal and per

manent business of raising live stock. Appellant ranged
on an average of 4000 head of cattle and from 400 to 500
horses upon the public domain in the vicinity of the ranch,
and within a radius of from eight to twenty miles thereof.
He had about 200 acres of land inclosed by fence. Be-
sides maintaining an orchard and garden, appellant raised
large quantities of hay, grain, and other farm products on
this land. The use made of the ranch and the crops raised
thereon is well illustrated by appellant, who testified on
that point as follows:

"I used as the center or home ranch for conducting that
business (stock raising) the farm at Sunnyside where this
water (diverted by respondents) was applied. . . . I
employed from six to nine men on that ranch and on the
other ranch (summer ranch) taking care of the cattle. The
men working on the other ranch lived on the farm at Sun-
nyside after the cattle came out of the hills in the fall. I
also kept some stock around the house and premises on the
Sunnyside ranch. I would winter there at the ranch at
Sunnyside . . . cattle of all kinds and a great number
of calves and thin cows and heifers and saddle horses, etc.
The entire herd of my stock ranged in that vicinity when
winter set in. The Durhams, thoroughbreds, and saddle
horses would always come when the cold weather set in. The
calves and thin cows we would gather and drive in, and we
kept them there during the winter. We also kept at the
ranch from fifteen to twenty-five work horses, saddle horses,
and stallions. We had to keep them up and feed them at
the ranch all the time. . . . All the produce of the
farm was used in feeding the stock and men. . . . In
the winter we had only the water from the springs (the
water in question). We had none from the canyon."

Prior to the alleged unlawful acts of respondents there
was a continuous flow of pure potable water from the lower
group of springs onto the ranch. This water was used by
appellant for watering stock, culinary, and other domestic
purposes, and during the irrigating season of each and every
year was also used on the ranch for irrigating an orchard,

garden, and farm products in general. Since the diversion
of the water by respondents, appellant, in order to supply
his ranch with water for wartering stock, culinary, and
other domestic purposes, has been and is compelled to pump
water from a well into the main pipe line through which it
is carried to his ranch. When the pump is not running, he
is compelled to haul water for culinary and other domestic
purposes from what is known as the Icelander Spring, which
is situated over a hill and about one-half mile from his
house and corrals. It will thus be observed that the water
in question is valuable to appellant for purposes other than
irrigation. The court therefore erred in restricting the
measure of damages to the value of the water for that pur-
pose only.

It appears that the water has no fixed market value. Up-
on this point appellant testified in part as follows:

"I know the conditions and demands for water up there.
There have been no sales, but there is no other water out
there, nor none come-at-able. It doesn't have a fixed market
value in that canyon."

Counsel for appellant in their brief say: "This water
.　.　. could not possibly have had a fixed market value."
Respondents concede this to be the case. The record also
shows that appellant cannot from any source obtain an ade-
quate supply of water to replace the water diverted by re-
spondents.

As we have pointed out, appellant in his complaint speci-
fies the different uses made of the water in question on his
ranch and the damages caused by its diversion as follows:

"And thereby the defendants have diverted the water of
plaintiff in the creek, and the said plaintiff is deprived
thereof, .　.　. and said plaintiff is without water to
water his garden, his lucerne and other vegetables, or to use
the same for culinary, domestic, or stock raising purposes;
.　.　. that the defendants .　.　. have destroyed the
water rights of said plaintiff and ruined his farm. .　.　.
That the value of the said farm, together with the enter-
prises connected therewith and dependent thereon, is $200,-

·000, . . . and that if the defendant is permitted to divert the said water and to continue the said injury the plaintiff will be injured thereby to the extent of $150,000."

The evidence, without conflict, shows that the water was in fact used by appellant for the purposes alleged in his complaint. The court, in determining the amount of damage sustained by appellant because of the diversion of water by respondents, should have taken into consideration the different uses appellant made of the water on his ranch. This the court did not do, but, as hereinbefore stated, the court adopted as the measure of damages the difference in. value of twenty-five acres of land with and without water. In their petition for a rehearing counsel for respondents with much earnestness contend that the pipe line (now useless as a conduit of water because of the diversion) is not a proper element of damages. While we, in effect, held in the first opinion announced and filed on this appeal that the pipe line, in view of the fact that it was rendered useless as a means of carrying water by the wrongful acts of respondents, is a proper element of damages, upon further reflection we are forced to the conclusion that appellant·is not entitled to recover for the pipe line. The value of the pipe line is represented in the enhanced value of the water by being carried therein in a continuous and uninterrupted flow from the springs to the ranch undiminished in quantity and unimpaired in quality.

Numerous errors are assigned by appellant relating to the rejection of evidence offered by him on the question of damages, but we do not think, in view of what we have said, that the questions presented by these assignments will again arise; hence we do not deem it necessary to discuss them.

The cause is remanded, with directions to the trial court to modify its finding of fact No. 1 by striking that portion of it which reads as follows: "That the value of said water is $1875"—and to set aside the other findings of fact made and filed in the case; and to vacate the judgment, and to reopen the case for the taking of evidence on the question

of damages, and to retry the case on that issue only in accordance with the views herein expressed. Cost of this appeal to be taxed against respondents.

FRICK, J.

I concur. I think the appellant is entitled to recover the pecuniary value of the water of which respondents deprived him. That value is to be ascertained after considering the uses to which appellant applied the water, and whatever the money value of such uses was is, I think, the measure of damages. The fact that appellant used the water during certain seasons of the year for irrigation is one element, the fact that he used it during other seasons of the year to water his live stock is another element, and the fact that he also used it for other purposes is still another element. The money value of all these elements combined constitutes the amount appellant should receive. In this case it appears that the interference with appellant's source of water supply was caused by the respondents in the pursuit of some lawful enterprise. Under such circumstances neither punitive nor mere speculative damages should be allowed, but appellant's recovery should be strictly limited to the actual loss or damage he has sustained by reason of being deprived of the use of the water. Of course, if appellant can from some other source obtain the amount of water of which he was deprived for a sum less than the value thereof as aforesaid, he should be limited in his recovery to the cost of obtaining the water from some other source. Again, if the cost of obtaining the water from some other source is in excess of its value when applied to the purposes I have mentioned above, the appellant should nevertheless be limited to the value of the water, and not to the cost of obtaining the same from some other source. The primary object in view should be to allow appellant such a sum as will compensate him for his loss. No more; no less.

STRAUP, J.

I concur in the judgment granting a new trial on the issue of damages. It, in effect, is conceded that the record shows the plaintiff to be the owner in and to the use of at least one-third of a second foot of water, or a quantity, as found, sufficient to irrigate twenty-five acres of land. The plaintiff had appropriated and acquired the water, and by means of a pipe line had conveyed it from springs to his land where he used it for irrigation, watering live stock, and for culinary purposes. The defendants wrongfully appropriated and diverted the waters at the springs, and converted them to their own use. It is conceded that the pipe line has no value except to carry the water from the springs to plaintiff's land. By the wrongful acts of the defendants the water cannot be returned to flow in the pipe line, and hence the plaintiff is permanently deprived of the water, and his pipe line is rendered wholly valueless. Now, what is the measure of damages? The trial court held the difference between the value of plaintiff's land with and without the water found to be $1875; and the value of the pipe line found to be $1600. I, too, think the court too much restricted the measure. But I think my Associates also too much restrict it. The water here is treated as personal property and the measure of damages as in an action of conversion, not as trespass to realty. What, then, is the measure? The loss and injury sustained by the plaintiff as the direct and proximate cause of the conversion. That ordinarily on conversion is the market value of the property converted. But here it is said and conceded that there was no market value. This, because of a scarcity of water in the vicinity, no water was bought and sold on the market; the plaintiff's water being about all the water there was for some miles around in an arid and mountainous country. He nevertheless is entitled to be made whole for the loss and injury sustained by him directly attributable to the defendants' wrongful acts. In ascertaining this it is proper to consider the use or uses the plaintiff had made of the

42 Utah 31

water, but it should not be restricted alone to that. I think it also proper to consider whatever beneficial use the plaintiff could have made of the water and every purpose for which it could have been used, not some mere speculative or conjectural use or purpose, but one of reasonable certainty and practicability. That is, the plaintiff should be at liberty to show, if he can, any reasonable, practical, and beneficial use which naturally and ordinarily could have been made of the water. The water was his, and he had the right to use it, not only for the purposes for which he had used it, but also for other beneficial purposes for which it could have been used. It was just as valuable and beneficial to him to use it to supply the inhabitants of Sunnyside with water as it was to the defendants to take it and use it for that purpose. So in estimating the value of the water I think the plaintiff should be permitted to show, not only the uses which he had made of the water, but also the uses which naturally and ordinarily could have been made of it.

Now, as to the pipe line. The wrongful acts of the defendants in taking the water and permanently depriving the plaintiff of it not only as a natural and proximate cause, but as an inevitable result, wholly destroyed the pipe line and rendered it useless and valueless. There is no doubt of that. The same wrongful acts of the defendants in converting the water in legal effect also constituted a conversion of the pipe line. Such loss and injury to the plaintiff is just as direct and proximate and just as great as though the defendants had torn up the pipe line and had either used it or had thrown it away. I see no reason why the plaintiff should not be compensated for such loss and injury as measured by the reasonable value of the pipe line at the time of the conversion.