### KENNECOTT COPPER CORP. v. SALT LAKE COUNTY et al.

No. 7639.   Decided November 17, 1952.   (250 P. 2d 938.)

See 61 C. J., Taxation, sec. 800. Valuation of property by taxing authorities. 51 Am. Jur., Taxation, sec. 696.

*C. C. Parsons, Wm. M. McCrea* (now deceased), *A. D. Moffat, Calvin A. Behle,* Salt Lake City, for appellant.

*Frank E. Moss,* County, Atty., *William T. Thurman,* Salt Lake City, for respondent.

*G. Hal Taylor, Leland S. McCullough, Don J. Hanson, C. M. Gilmour,* Salt Lake City, for intervenor and respondent.

WADE, Justice.

Plaintiff, Kennecott Copper Corporation, appeals from a judgment dismissing this action brought to recover taxes paid under protest. The taxes in question were levied on plaintiff's millsite and tailings dump at Magna and Arthur in Salt Lake County. The State Tax Commission fixed the assessed valuation at $45.73 per acre.

The millsite, a 982.42 acre tract, is located on a sloping hillside with the tailings dump, and a 6,258.93 acre tract, adjoining it on the flat ground below. Before the millsite and tailings dump, these lands were used only for grazing purposes. The tailings dump grounds are covered with tailings to an average depth of 36 feet, they cover approximately ten square miles, around the outer edge a dyke has been constructed and a ditch to catch the waters which drain constantly through the tailings and contains copper precipitates. From 1939 to 1947, the amount of copper taken from this water was from as low as 148.101 pounds in 1946 to as much as 1,224,567 pounds in 1940. This copper is reported to the State Tax Commission as a part of the

net proceeds of the mine for taxing purposes. The tailings have become a part of the ground where they are dumped and have completely destroyed the value of the ground for grazing purposes. These tracts are about 13 miles away and completely separated from plaintiffs open pit mines at Bingham from which the ores processed here are transported by rail. These two tracts are readily adjustable for use together in the gravity process of reducing ores. The two tracts were properly assessed as one tract for in the reduction of low grade ore the tailings dump is as much a part of the ore concentration plant as the mill proper because no such mill could operate without a convenient place to dump its waste materials.

Unimproved lands in this neighborhood similar to the millsite tract in its natural state are assessed at $5.44 to $6.86 per acre, and lands similar to the tailings dump tract in its natural state are assessed at from $4.14 to $20.27 per acre. However, there is a 632-acre tract similar to the tailings dump tract when those tracts were both in their natural state, now being used in harvesting salt, which is assessed at $66.16 per acre.

Plaintiff claims that this assessed valuation (1) is arbitrary, discriminatory and lacks uniformity and equal protection of law, (2) that it fails to meet the requirements of Sec. 80-3-1(5), U. C. A. 1943, defining "value" and "full cash value" to "mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor", and (3) that these tracts are a part of plaintiff's "mines and mining claims" and as such subject only to the $5. per acre statutory flat rate provided by Sec. 80-5-56, U. C. A. 1943.

We consider the last claim first. Section 80-5-56, supra, requires that

"All metalliferous mines and mining claims, * * * shall be assessed at $5 per acre * * *."

Millsites and tailings dumps which are completely severed from and located as far from the mine and mining claims as these are not mines or mining claims as those terms were used in the statute. To this effect see *Salt Lake County* v. *Kennecott Copper Corporation,* 10 Cir., 163 F. 2d 484, which raised the same question with reference to the same property and between the same parties, and *South Utah Mines & Smelters* v. *Beaver County,* 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004.

Plaintiff's second claim is also untenable. Under Sec. 80-5-1, U. C. A. 1943,

"All taxable property must be assessed at its *full cash value.*"

The 1947 amendment to this provision, S. L. 1947, Ch. 102, Sec. 80-5-1, provides that

"All taxable property must be assessed at forty percent of its *reasonable fair cash value.*"

Sec. 80-3-1(5), U. C. A. 1943, provides that

" 'Value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor."

This definition defines the phrase "reasonable fair cash value" which was substituted for "full cash value" also, for there is nothing to indicate that a different meaning was intended by this substitution. Although the phrase "the amount at which the property would be taken" refers more definitely to the amount at which the creditor would be willing to accept the property than it does to the amount the debtor would insist on receiving, still inherent in this provision is the concept that such amount must also be agreeable to the owner-debtor for the creditor could not take the property at an amount to which the owner-debtor would not agree. In other words, this is a definition of "market value." Although it speaks in terms of paying debts and not sale for cash, it is the price which would be

agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. 18 Am. Jur. 876. It means the same thing as "just compensation" in connection with "eminent domain." See 5th Amendment to United States Constitution, and Constitution of Utah, Article I, Sec. 22; *Great Northern Railroad Co.* v. *Weeks,* 297 U. S. 135, 56 S. Ct. 426, 80 L. Ed. 532; *West* v. *Chesapeake & Potomac Tel. Co.,* 295 U. S. 662, 55 S. Ct. 894, 79 L. Ed. 1640.

In *Moyle* v. *Salt Lake City,* 111 Utah 201, 176 P. 2d 882, 888, we said:

"It is elemental in eminent domain cases, that the owner is entitled to the value of the property for the highest and best use to which it could be put  *  *  *."

To this effect see 18 Am. Jur. 879, under the title, "Eminent Domain" Sec. 244, and the many cases therein cited. The fact that the value of this property for grazing purposes has been completely destroyed, and there is no sale for it on the open market does not mean that it is valueless. On this subject, under the title of "Eminent Domain," 18 Am. Jur. 885, Sec. 247, says:

"The adaptability of the land sought to be taken in eminent domain for a special purpose or use may be considered as an element of value. If the land possesses a special value to the owner which can be measured in money, he has the right to have that value considered in the estimate of compensation and damages.

"While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, as a church or a college or a cemetery or the fee of a public street, or some other piece of property which may have an actual value to the owner, but which under ordinary conditions he would be unable to sell for an amount even approximating its real value. As market value presupposes a willing buyer, the usal test breaks down in such a case, and hence it is sometimes said that such property has no market value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property

is suitable. This is not taking the 'value in use' to the owner as contra-distinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value. The market value, and not the value for such special purpose, or the value to the party seeking to condemn it, is the measure of damages.

"In order that this rule be applicable, it must appear, not that the property is peculiar, but that the relationship of the owner thereto is peculiar—its advantages to him more or less exclusive—that is, that it is property having value peculiar to the owner only, and without possible like value to others who may acquire it."

Here the property has become valueless for grazing purposes. There is no other company that could operate it as a millsite and tailings dump as it is now being operated. So there is little possibility of a sale on the open market. But that does not mean that it is worthless or has only a nominal value. Plaintiff does make a profitable use of these lands. They are a part of a multi-million dollar going business; it has expended much money preparing these lands for their present use and to prepare other lands for a similar use would be expensive. Under these circumstances, the use plaintiff is making of this tract is its highest and best use. The Commission properly considered these elements in determining the assessed valuation. To some extent this valuation must be arrived at by using opinion and sound judgment as to what these lands would probably sell for on the open market if there were others who could use them for their highest and best use. By the changes which plaintiff has made it has destroyed the value of these lands for grazing purposes but enhanced their value for use in its mining operation. This makes it clear that the land is more valuable for that use than it was in its former state. It would be obviously unfair to plaintiff to condemn and take this property without paying its value for its present use, and it would be equally unfair to respondents to assess it at a lower valuation. While a valuation of this

property is more difficult to determine than it would be if sales were being made on the open market, that does not mean that any valuation is arbitrary or that there is no limit to the amount at which it might be assessed. The commission is required to use sound discretion and reasonable judgment, and the valuation placed on this property is well within that requirement.

Judgment affirmed with costs to respondents.

McDONOUGH, J., concurs.

WOLFE, Chief Justice.

I concur.

It is true, as urged by the appellant, that in determining the market value of lands sought to be condemned, the special purpose for which they are taken is not the basis on which the owner is entitled to be compensated. Its availability for that purpose, however, is an element to be considered in arriving at its market value, the market value being the true measure of compensation. *Minneapolis-Saint Paul Sanitary District* v. *Fitzpatrick,* 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897. Be that as it may, in the instant case the appellant is not seeking to condenn lands of others. We are concerned with a determination of the fair market value of lands which it now owns and which it has put to a use different than was being made of them when acquired. It is conceded by the appellant that in determining fair market value, the assessing body may consider the

"advantages of the situation of the property, its earning capacity or productiveness, the purpose or use to which it is put, its actual earnings, and any other factor which may influence or enhance its actual value." 51 Am. Jur. 649.

I agree with Mr. Justice Wade that the appellant by using the lands for a tailings dump of a multi-million dollar mining operation has put the lands to a higher use than

was formerly made of them, reflecting an increase in their market value. Also, that if these lands were sought to be condemned for a public use now, the appellant would be entitled to compensation therefor not on the basis that they were lands now practically worthless because their value for grazing had been destroyed, but on the basis that they were used as an integral part of a vast and profitable mining operation.

The fair import of the testimony of Commissioner Hammond of the Tax Commission is that the value of the use of the lands to Kennecott was only one factor in the Commission's determination of valuation. He expressly testified that the Commission did not know what would be the value of the lands to the appellant; that such a valuation would be difficult to determine by

"one who is not engaged in Kennecott's operation,"

but that

"possibly [Kennecott's] engineer could determine such a value";

that the value of the lands to the appellant might be an "astronomical figure" and that such value would not be a sound basis for valuing the lands for purposes of taxation. He did amdit that the lands would have a nominal or negative value if the appellant's operation were abandoned. But Kennecott's operation has not been abandoned—it is very much alive and the lands should be assessed with that fact borne in mind. Certainly an owner of real property in the business district of a city cannot complain of his assessment on the ground that the business district may at some time in the remote and non-foreseeable future shift to a different part of the city, rendering much of the old business district property vacant and non-rentable.

Were there a demand for adjacent grazing lands for industrial uses, such fact could be taken into consideration in their assessment and a higher value would doubtless result.

TUCKETT, District Judge.

I dissent insofar as the opinion of the Court pertains to the tailings dump lands.

It is apparent from the record in this case that the Tax Commission arrived at its valuation of the tailings dump solely upon the value of the land to the plaintiff. This is apparent from the testimony of Commissioner Hammond that he considered the tailings dump would be of only a nominal or negative value if the plaintiff's mining and milling operations were abandoned, but that measured by its value to the plaintiff for its present use its valuation for tax purposes is $45.73. In other words, the Commission determined that the market value of the tailings dump was $114.40 per acre and by taking forty per cent of that figure arrived at the valuation of $45.73.

It is apparent that the tailings dump lands have no other use or value except for the purpose of dumping the refuse from the mills, aside from the copper precipitates recovered from the dump and which are taxed under the net proceeds provision of the statute.

The elements to be considered by the Tax Commission in determining the reasonable fair cash value are the same in arriving at a valuation for tax purposes and in the determining of the value in condemnation cases. These principles were before the U. S. Supreme Court in the case of *Great Northern Railroad Company* v. *Weeks,* 297 U. S. 135, 56 S. Ct. 426, 428, 80 L. Ed. 532; wherein the Court said:

"The full and true value of the property is the amount that the owner would be entitled to receive as just compensation upon a taking of that property by the state or the United States in the exertion of the power of eminent domain. That value is the equivalent of the property, in money paid at the time of the taking." *Olson* v. *United States,* 292 U. S. 246, 254, 54 S. Ct. 704, 78 L. Ed. 1236.

The principles governing the ascertainment of value for the purposes of taxation are the same as those that control in

condemnation cases, confiscation cases, and generally in controversies involving the ascertainment of just compensation. *West* v. *Chesapeake & Potomac Teleph. Co.*, 295 U. S. 662, 55 S. Ct. 894, 79 L. Ed. 1640.

The tailings dump lands have no value except for the purpose for which they are now used. The original value of the lands for grazing purposes has been destroyed. Under the law applicable to condemnation cases the owner of land sought to be condemned would be entitled to the reasonable market value of the land for the highest and best use to which it could be put at the time of the taking. *Moyle* v. *Salt Lake City*, 111 Utah 201, 176 P. 2d 882. The law contemplates that market value is that which the land would bring on a free market between a willing buyer and a willing seller.

The defendant and the intervenor argue that the value of the lands might properly be measured by its peculiar value to the plaintiff. I do not think this is the proper basis for determining market value.

The Tax Commission may properly consider the factor of "use" in determining the market value of the lands, but this is only one of the factors to be considered in determining such value. The use factor is important in determining the market value in both condemnation cases and in other cases involving the valuation of property. However, the use factor is only one of many elements to be considered in arriving at a price a tract of land would bring on an open and free market. While the Court will not substitute its judgment for that of the Tax Commission, the Court should grant relief where it appears that the taxing body has based its valuation upon an erroneous premise, so that the assessment resulted in an arbitrary fixing of such value.

CROCKETT, J., being disqualified, does not participate herein.

HENRIOD, J., not participating.