Argued July 22, reversed and remanded September 21, 1971

# STATE BOARD OF HIGHER EDUCATION, *Appellant, v.* THE FIRST METHODIST CHURCH OF ASHLAND ET AL, *Respondents.*

488 P2d 835

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*Sidney E. Ainsworth,* Ashland, argued the cause and filed the brief for respondents.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

LANGTRY, J.

Plaintiff condemnor appeals from a judgment based on a jury award of $65,000 in a condemnation case. The property taken was a church youth center building upon land totaling 16,500 square feet adjacent to the Southern Oregon College campus in Ashland. The building was one story, frame construction, covering 1500 square feet.

The main thrust of plaintiff's four assignments of error is the trial court's acceptance of the "substitute facility" or reproduction theory for the valuation of defendants' property. Plaintiff requested the

following instruction, which the trial court refused to give:

"The only issue in this case is the Fair Cash Market Value of the property being acquired by the State * * *.

"Therefore, I instruct you that you shall not consider or speculate as to what a replacement property might cost."

The court did instruct:

"* * * [An expert] witness may consider the principle of substitution * * * in determining the value of the property being taken.

"* * * Evidence of the cost of the substitution * * * is not direct evidence of the value of the property taken * * * [but may be considered in evaluating the expert's testimony]."

The exception allowed to the refusal to give the requested instruction suffices to raise the question of whether consideration of the replacement theory was appropriate. We believe it was error.

■ ■ Market value is the recognized measure of compensation when land is taken by eminent domain. *Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 281 P2d 707 (1955); 4 Nichols', Eminent Domain 41, § 12.2 (1962). Other criteria are recognized, though, in special circumstances. One is the "replacement facility" theory, described in 4 Nichols', § 12.32 at 227:

"Where a building is a specialty, and, in a sense, unique, being constructed for a special use, the valuation cannot be predicated on the same basis as a building constructed for general * * * use. * * * It has been held under such circumstances that reproduction cost or replacement cost may be considered * * *."

Two appraisers testified for defendants, each basing his opinion of value upon a theory of "substi-

tution" or reproduction of the facility. The asserted uniqueness of the youth center was the close proximity to campus and its function in serving the "religious, emotional, and secular needs of students on campus." The record indicates that the construction and design of the center were standard. The import of the substitution, replacement, or reproduction rule is a specialty that renders market value inapplicable because comparable transactions are impossible. See, for example, *In re James Madison Houses, Borough of Manhattan,* 17 App Div 2d 317, 234 NYS2d 799 (1962), noted in Nichols', Eminent Domain, Supp V 4, p 149. We see no "speciality" in the physical makeup of the youth center that renders market value inapplicable as a measure of compensation.

The evidence in the case at bar also indicates that recently there had been one sale of comparable land, with as much area and within two city blocks of the campus, to another church for a college youth center, and there had been other sales in the same area of roughly comparable property. Inability to demonstrate lack of market value is not present here, so replacement facility valuation was inappropriate.

Even if the above requirement had been met, we are not convinced the "substitute facility" theory would have been appropriate. Recent cases indicate its use has been limited to cases where the property taken performs a legally necessary function. In a leading case in which the doctrine was used, *United States v. Certain Land in Borough of Brooklyn, Etc.,* 346 F2d 690, 694-95 (2d Cir 1965), the court said:

> "But the additional cost of land for an adequate playground may fit more neatly into another pigeon hole than in the traditional severance damage category. It may be more proper to treat it under the

rubric of the substitute facility doctrine, namely, to provide such substitute facilities as are *'necessary'* to carry out the public function served by the condemned property. \* \* \* But *'necessity,'* \* \* \* [citing authorities] looks to the pragmatic needs and possibilities, not just to technical legal minima \* \* \*." (Emphasis supplied.)

To the same effect is *State v. Waco Independent School District,* 364 SW2d 263 (Tex Civ App 1963), and *United States v. Board of Education,* 253 F2d 760 (4th Cir 1958). In each of these cases, and in others which they review, the facility taken was one which the condemnee had a legal duty to operate. Thus in *United States v. Board of Education,* supra, the court said:

"\* \* \* And the substitute facility must be that which the claimant is legally required to construct and maintain \* \* \*." 253 F2d at 764.

██ Desirable as it may be for the church to operate the youth center, it had no legal duty to do so. Thus, for two reasons, (a) availability of the usual methods of demonstrating market value, and (b) lack of legal necessity, the substitution or reproduction theory is inapplicable to the case at bar.①

---

① Had it been applicable, failure of defendants' appraisers to take into account depreciation of the building would make their testimony inadmissible, and would be cause for reversal on this appeal.

"Whenever consideration is given to the cost of reproduction as an element in the determination of market value, it is recognized that a proper deduction must be made for depreciation. In fact, it has been held that if the award is based upon cost of reproduction without any allowance for depreciation, *the award must be set aside.*

"*Reproduction cost is generally not admissible in evidence unless evidence of depreciation is submitted at the same time*

Inasmuch as the case must be tried again, we will consider another point raised on appeal. The plaintiff asserts that the testimony of defendants' appraiser Jones, to the effect that the plaintiff would have to acquire 24,000 square feet more land than the 16,500 in the taken property in order to comply with an Ashland ordinance, should have been rejected. The witness said the ordinance had been passed after the youth center was built (thus exempting it from compliance for the existing property), and would require additional land for off-street parking on a basis of the seating capacity of the building for the church's new site. The ordinance, or its terms, was not in evidence. The jury was not informed of the ordinance requirements, and direct and cross-examination were too sketchy to produce an understanding of it. The building being taken covered 1500 square feet and was located on land totaling 16,500 square feet. So it is questionable whether the ordinance requirements for off-street parking could not be met on a comparable piece of land. However, the jury was, and this court is, in a speculative posture as to these facts.

The market value of the taken property may have been enhanced by an exemption from off-street parking requirements, but that must be determined at a new trial when the facts are developed in the record.

Reversed and remanded for a new trial.

---

* * *." (Emphasis supplied.) 5 Nichols', Eminent Domain, § 20.3 (Rev 3rd ed 1969).

The same rule is related in 2 Orgel, Valuation under Eminent Domain 17, § 191 (2d ed 1953), Orleans Parish School Board v. Paternostro, 236 La 223, 107 So2d 451 (1958).