495 P.2d 817

STATE of Utah, BY AND THROUGH ITS ROAD COMMISSION, Plaintiff and Appellant,

v.

Reed E. LARKIN and Uarda G. Larkin, his wife, Defendants and Respondents.

No. 12537.

Supreme Court of Utah.

April 4, 1972.

Vernon B. Romney, Atty. Gen., John T. Evans, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Walter G. Mann, Mann & Hadfield, Brigham City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiff initiated this action under the State's power of eminent domain to acquire 79.493 acres of defendants' land for the

purpose of constructing an interchange for Interstate 80 and U. S. Highway 30 in Box Elder County, approximately 1½ miles west of Snowville, Utah. The parties stipulated that the value of the land taken and the improvements located thereon was in the amount of $6,214.51. The issues of severance damage and offsetting benefits were tried before a jury. The jury found that defendants' remaining property was damaged in the amount of $3,040, and that the remainder was benefited in the amount of $540. The trial court entered judgment in accordance with the verdict, plaintiff appeals therefrom, seeking a new trial on the same issues previously tried.

Defendants were the owners of a 640-acre tract of land, most of which was planted in grass to feed livestock. A creek, located in the southerly portion, furnished water for the livestock. The land taken for the freeway trisected the acreage into three separate parcels. The evidence indicated that the highest and best use of the land was for agricultural purposes, specifically for cattle feeding operations. After the taking, two tracts were left isolated, one of 17.95 acres in the northwest corner and one of 44.93 acres in the northeast corner. The isolation of these two tracts from a source of water rendered them no longer usable for grazing, since the size of the acreage involved made it impractical to haul water when considered in relation to the small number of cattle that could be grazed thereon. The land taken plus the two isolated tracts made a sum of 142 acres which was removed from use in defendants' cattle operations.

Prior to the taking, defendants' tract included the entire northern half of the section; Highway 30 was located along the northern boundary of the section line, and defendants had a convenient access therefrom to their tract. The taking completely severed the southerly portion of the tract, wherein the bulk of the remaining land was situated, from its prior line of access. Highway 30 was relocated so as to be along the northern boundary of approximately three-fourths of one quarter section in the south tract. A graveled stock trail was constructed by plaintiff, which ran along the northern boundary of the other three quarter sections which formed the northern tier of defendants' south tract.

During the course of the trial, a value-witness for the defense, Mr. Chadwick, testified that the south tract had lost approximately 15 per cent of its value. He ascribed this loss to certain factors which the willing buyer would consider, namely, the inconvenience of access, the increase in travel time to reach the property, and the increased cost of operation. Plaintiff moved to strike this testimony on the ground that inconvenience of travel is non-compensable. The trial court denied the motion on the ground that whether the access to the south tract was reasonable

**298**

and the effect of the access on the market price were issues for the jury. On appeal, plaintiff asserts the trial court erred and cites the principle that damage based upon a reasonable change of access is noncompensable. Plaintiff further urges that damage based upon additional travel time and inconvenience is noncompensable, whether the damage is due to (a) an increase in costs of operation or (b) additional travel time to reach the property.

The instant case bears a strong similarity to State, By and Through Road Comm. v. Williams,[1] wherein the evidence indicated that the highest and best use of the total property was as a beef-cow unit and that the total unit was more valuable to a prospective purchaser than the separate tracts. This court stated:

> The location of the property as a farming and ranching operation after condemnation was less desirable with a consequent decrease in value. The diminution in value of the property was directly attributable to the barrier created by the freeway which segmented the fields. The willing buyer, after construction of the freeway, would not pay the same price as formerly because of the access problems encountered in the operation of the ranch.

■ In the instant action not only was defendants' single tract trisected by the tak-

ing with its consequent limitation upon movement from field to field, but the access from the south tract to existing U.S. Highway 30 was destroyed. The damage caused by this loss of access was mitigated by the construction of the graveled cattle trail and the relocation of Highway 30 along the northern boundary of the south tract for a few hundred feet in the far western portion of the section. However, the access to the south tract was radically altered by the taking, and the trial court properly permitted evidence concerning the effect of the accessability upon the fair market value.

> One portion of a tract may be cut off from convenient access to the remainder by reason of a partial taking, or access from the remainder area to the nearest highway may be rendered difficult. Either of these injurious results is an element of damage which may be considered.[2]

Plaintiff asserts that the trial court erred by its ruling, denying introduction into evidence of testimony concerning sales of comparable property located on other interchanges of interstate highways. At trial plaintiff proceeded on the theory that any severance damage suffered by defendants was offset by the benefits accruing to the remaining property, specifically, plaintiff's value-witnesses were of the opinion that portions of defendants' remaining property

1. 22 Utah 2d 301, 304, 452 P.2d 548 (1969).

2. 4A Nichols On Eminent Domain (3d Ed.), Sec. 14.2431, pp. 14–182–14–184.

were valuable commercial sites because of their proximity to the interchange. Plaintiff, both during direct examination of its witnesses and cross-examination of defendants' witnesses, attempted to inquire about sales of property located near interchanges in the Brigham City and Tremonton areas. The trial court sustained defendants' objection and ruled that Tremonton and Brigham City were too remote both as to distance and type of area.

. . . Whether evidence of the value of other property should be admitted depends upon whether they are sufficiently similar in character, location, and other factors which would influence value, that they meet the test of "reasonable comparability" so they can reasonably be regarded as having probative value as to the worth of the property in question. Because of the responsibility of the trial judge as the authority in charge of the trial, he is allowed considerable latitude in his judgment upon the matter; and his ruling should not be disturbed unless it appears he was clearly in error, and that this redounded to the prejudice of the complaining party.[3]

A survey of the record reveals that the dissimilarities indicated in the properties were sufficient to preclude a ruling by this court that the trial court abused its discretion in rejecting the proffered evidence.[4]

Plaintiff urges that even if the ruling of the trial court were sustained as to the direct examination, no determination of similarity is required on cross-examination concerning comparable sales.

. . . When sales of comparable properties in the vicinity of the property involved have been testified to on direct examination, or are the basis of a witness' opinion as to value, cross-examination as to such sales is proper for the purpose of testing his knowledge of market values or lessening the weight of his opinion.[5] However, if the witness has testified that he did not consider certain sales in reaching his conclusion as to value, ordinarily he may not be cross-examined with respect to such sales. Cross-examination with respect to sales which are not comparable is not permitted.[6]

3. State By and Through Road Commission v. Wood, 22 Utah 2d 317, 320, 452 P.2d 872 (1969).

4. See Salt Lake County v. Kazura, 22 Utah 2d 313, 452 P.2d 869 (1969).

5. The foregoing statements were quoted with approval in State, By and Through Its Engineering Comm. v. Peek, 1 Utah 2d 263, 274, 265 P.2d 630 (1953).

6. 5 Nichols On Eminent Domain (3d Ed.), Sec. 18.45(2), p. 18–223; also see State v. Reeh, Tex.Civ.App., 434 S.W.2d 416, 419, 420 (1968), wherein it was held that it was error for the trial court to permit the sales price to be shown by cross-examination when there was no evidence of comparability.

Plaintiff further asserts that the trial court improperly refused to permit testimony concerning the removal of gravel from defendants' remainder after the date of the taking. The record reveals that subsequent to the taking defendants sold barrow to a contractor working on the project. The jury was fully apprised that the removal of a ridge on defendants' remainder was not a result of plaintiff's construction. At the conclusion of the trial, plaintiff took an exception to the ruling of the trial court which excluded testimony as to the number of yards removed, which plaintiff asserted was evidence of a change in condition of the land unrelated to the State's construction project. In the proceedings before the trial court, counsel for the plaintiff stated:

> . . . These matters the court indicated [in chambers] were not to be admitted, notwithstanding the plaintiff's agreement to the fact that the money paid the defendant for the removal of the barrow was inadmissible and that the state had no intention of trying to place that into evidence.

On appeal, plaintiff asserts: (a) that testimony indicating a change in condition should be admitted when the jury has viewed the land in its changed condition; (b) that evidence of the benefit received from the sale of the barrow was a special benefit which should have been admitted

and used as an offset to the severance damages.

 In regard to evidence of the sale of the barrow, the statement of counsel indicates another position concerning this matter in the trial court. This court will not consider a matter raised for the first time on appeal.[7] A review of the records indicates that two witnesses informed the jury of the change of condition, the trial court did not abuse its discretion by limiting the evidence in regard to this collateral matter.

 Finally, plaintiff asserts prejudicial error on the part of the trial court when it refused to give a requested admonitory instruction. Defense counsel during his rebuttal argument to the jury pointed out the 22 per cent reduction in acreage to defendants' tract; and stated that if prior to the taking defendants had 200 cows grazing on the tract, afterwards they would only graze 156 cows. Plaintiff asserted an objection and contended the argument constituted an improper appeal to the jury on the ground that it was a request for compensation for loss of profits in the operation of defendants' business. Plaintiff requested an instruction that defendants were not entitled to compensation for loss of business profits.

Plaintiff's assertion is without merit when considered within the context of the record. From the opening statement of

---

7. Simpson v. General Motors Corp., 24 Utah 2d 301, 303, 470 P.2d 399 (1970).

defense counsel and throughout the trial, defendants' claim for severance damage was predicated on the assertion that the fair market value of grazing land decreases with the size of the tract, e. g., a 640-acre tract is worth more per acre than a 500-acre tract to a person engaged in livestock operations.

The judgment of the trial court is affirmed. No costs awarded.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.