SALT LAKE CITY CORPORATION, a
Municipal Corporation of the State of
Utah, Plaintiff and Appellant,

v.

UTAH WOOL PULLING COMPANY, a
Utah Corporation, Defendant and
Respondent.

No. 14659.

Supreme Court of Utah.

July 5, 1977.

Roger F. Cutler, Salt Lake City Atty., Ray L. Montgomery, Asst. City Atty., Salt Lake City, for plaintiff and appellant.

Glen E. Fuller, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

This is an action in eminent domain in which Plaintiff Salt Lake City Corporation initiated condemnation proceedings against Defendant Utah Wool Pulling Co. to acquire defendant's property located south of the Salt Lake City International Airport. A settlement totalling $635,694.00 was reached before trial upon the value of all of defendant's property, including the land, buildings, and the various water diversion facilities used to remove underground water authorized by defendant's certified water rights. The jury returned a verdict in favor of defendant, finding that its water rights were worth $50,000.00. Plaintiff appeals from the judgment on that verdict.

Plaintiff's theory in this matter is that, standing alone, defendant's water rights had no or nominal value. This theory is based upon the proposition that defendant had been paid just compensation for all of its property, including the diversionary facilities by which it made use of the water flow from the wells on the condemned property. Thus, plaintiff contends that the value, if any, of defendant's water rights was the value of defendant's diversionary facilities, already paid for in the settlement between the parties, plus the filing fee for a right to drill (which drilling could occur by filing an application therefor with the State Engineer).[1] Evidence disclosed the said filing fee would be between $200.00 and $500.00.

Defendant, on the other hand, maintains that at the time of the taking, the water rights did have value. Its theory is reflected in the parties' Stipulation for Judgment, the pertinent part of which is as follows:

In this action the defendant has made claim that the water rights from which well water was secured for use on the condemned premises had a market value of the total properties, as a unit, so as to result in a total fair market value in excess of the aforesaid sum of . . . $635,694.00. . . . The value of such rights, if any, had been excluded from this Stipulation.

Defendant attempted to prove the value of the water rights by showing the uses to which the water was put in its wool pulling business,[2] by showing cost of replacement of the water, and by demonstrating comparable sales as a means of arriving at market value. The disputes in this case revolve around the conflicts between the respective theories of plaintiff and defendant, and defendant's proffered evidence.

■ Plaintiff's first point on appeal is that defendant's water rights should have been valued separate from defendant's other properties, which were previously paid

---

1. Testimony at trial by expert witnesses of both parties was consistent, however, in concluding that there is no guarantee that when a person drills for water, he will obtain any particular quality, temperature, or volume of water. As one of plaintiff's experts testified, "Nature holds her own surprises".

2. The record shows that the primary business of plaintiff was the processing of sheepskins purchased from various packing houses west of the Mississippi River.

for and are not in issue. This point raises the statutory law in this State, viz., Utah Code Ann. Section 78–34–10 (1953), which provides:

The court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

(1) The value of the property sought to be condemned and all improvements thereon appertaining to the realty, and of each and every separate estate or interest therein; and if it consists of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed.

Although Section 78–34–10 provides that each interest shall be "separately assessed", that does not preclude valuation with relation to the appurtenant property and the uses to which the asset, herein water, is put. See *Sigurd City v. State*, 105 Utah 278, 142 P.2d 154 (1943). Plaintiff contends that since the value of defendant's water rights was expressly reserved by stipulation, that defendant somehow lost the right to have its water rights valued in relation to the appurtenant property. The Stipulation for Judgment, mentioned above, reveals that compensation for defendant's property was arrived at without reference to defendant's water rights. Indeed, those rights were expressly excluded. And the defendant in that stipulation contended that the value of its property, without reference to its water rights, was less than the value of the property when the water rights were considered. Defendant should not be denied the use of valuation factors allowed by this Court previously to other condemnees.

■ Plaintiff also argues that the *sole* inquiry should be directed toward the fair market value of the condemned property. Utah Constitution, Art. I, Section 22, provides that "Private property shall not be taken or damaged for public use without just compensation." This Court, in *Southern Pacific Co. v. Arthur*, 10 Utah 2d 306, 352 P.2d 693 (1960), set out the test for just compensation:

. . . The standard of what is "just compensation" in the ordinary case is the market value of the property taken, that is what a willing buyer would pay to a willing seller. . . .

*Arthur* recognized, however, that on occasion there is little or no possibility of sale on an open market, and consequently no market value in the usual sense of that term or—more precisely—by employing the usual test of a willing buyer and willing seller to determine market value. See also *Kennecott Copper Corp. v. Salt Lake County*, 122 Utah 431, 250 P.2d 938 (1952). This Court in *Arthur* then stated the rule applicable to a situation where there is little or no possibility of open market sales as follows:

. . . [I]ts value could be ascertained from the opinions of well-informed persons as to what reasonable purchasers would be willing to pay for the property on the open market *should* they find it suitable for their purposes. . . . [Emphasis added.]

In Kennecott, the court also illuminated the solution to the problem of the condemnee who owns property that does not reveal its value by the usual test:

. . . So there is little possibility of a sale on the open market. But that does not mean that it is worthless or has only a nominal value. Plaintiff does make a profitable use of these lands. They are a part of a multi-million dollar going business . . . . Under these circumstances, the use plaintiff is making of this tract is its highest and best use. The Commission properly considered these elements in determining the assessed valuation. . . . It would be obviously unfair to plaintiff to condemn and take this property without paying its value for its present use . . . . [122 Utah at 436, 250 P.2d at 940].

This passage is directly applicable to the case at bar. From the evidence in the record, it appears that there were no sales on the open market of water or water rights in the aquifer basin in which defendant's property was located, and thus no market value in the usual sense of the term. Defendant made very profitable use of the

water rights it possessed. In fact, the evidence indisputably showed that without the good quality of the well water on defendant's property, its business could not possible have been operated, and would have been worth only a nominal sum. For example, the following exchange occurred when one of plaintiff's expert witnesses was being cross-examined at trial:

Q. O.K. So the buyer comes to buy the Utah Wool Pulling plant, and we assume that the water is [not] flowing; how much less, in your opinion with these question marks in the buyer's mind, would be paid for this facility, and I am speaking of the land, and buildings and everything?

A. He would pay nothing for it any more than he would for an automobile without an engine.

In light of the analysis in *Kennecott* and *Arthur*, evidence was properly received showing that defendant's water rights did have value, despite the absence of sales in the open market within defendant's basin.

■ In order to arrive at a just compensation for defendant's water rights, the court admitted defendant's evidence as to the uses to which the water was put in its wool pulling operation. Plaintiff also assigns error to the admission of this evidence. The rule in Utah seems clear on this point. *Sigurd*, supra, was an action in eminent domain involving the taking of water. The Court therein said:

. . . Where an owner is deprived of his property rights in condemnation proceedings he should be compensated for the inherent value of his property in cases where there is no readily ascertainable market value. . . . [142 P.2d 159]

"Inherent value" would be the property's value taking account of all possible uses. See also *Kennecott*, supra; *Whitmore v. Utah Fuel Co.*, 42 Utah 470, 131 P. 907 (1913); *North Point Consol. Irrig. Co. v. Utah and Salt Lake Canal Co.*, 23 Utah 199, 63 P. 812 (1901). It was proper for the District Court to admit evidence as to the uses to which defendant put its water rights.

■ Plaintiff further argues that it was error for the District Court to admit evidence of comparable sales outside the aquifer basin in which defendant's property was located,[3] for the purpose of showing market value. The standard in this state for admissibility of evidence of comparable sales is stated in *State Road Comm. v. Larkin*, 27 Utah 2d 295, 495 P.2d 817 (1972).

. . . Whether evidence of the value of other property should be admitted depends on whether they are sufficiently similar in character, location, and other factors which would influence value, that they meet the test of "reasonable comparability" so they can reasonably be regarded as having probative value as to the worth of the property in question. Because of the responsibility of the trial judge as the authority in charge of the trial, he is allowed considerable latitude in his judgment upon the matter; and his ruling should not be disturbed unless it appears he was clearly in error, and that this redounded to the prejudice of the complaining party. [27 Utah 2d 299, 495 P.2d 820, quoting from *State Road Comm. v. Wood*, 22 Utah 2d 317, 320, 452 P.2d 872 (1969).]

The court in *Larkin* used an "abuse of discretion" standard for evaluating the trial judge's action. In this case, the evidence indicates certain dissimilarities between the water situation of defendant's property and that in the other nearby aquifer basins, viz., Heber Valley and West Corinne, where the sales occurred. There was evidence, however, of reasonable comparability among the areas in light of testimony by defendant's expert appraiser and the various adjustments made by that appraiser for certain factors to make the valuation more accurate. The District Court admitted the disputed evidence and allowed the dissimilarities shown on cross examination to go to the weight to be afforded the evidence by the jury. There was no abuse of discretion

---

**3.** There were no open market sales in defendant's basin.

by the District Court in admitting this evidence.

▋ Plaintiff's final point is that it was error for said Court to give the instruction on specialty property. That instruction provided:

> Where the integrated use of land, water, and improvements is so unique as to set the property apart from other properties common to the area, such facility is termed a "specialty property," and it is proper to value its component elements in arriving at total value by their reproduction or replacement costs, less accrued depreciation.

There is ample evidence in the record that defendant's operation was in fact specialty property. It appears that defendant operated one of the few wool pulling operations in the nation. Such operations require many special conditions. Plaintiff argues that the cost of replacement of the water was irrelevant and an improper factor in valuation. Plaintiff directs us to no Utah cases on point. There are, however, many cases on point in other jurisdictions. There seems to be a split of authority on the propriety of the use of replacement cost to determine valuation of a specialty property. The general rule is given in Nichols, *Eminent Domain*:

> Where a building is a specialty, and, in a sense, unique, being constructed for a special use, the valuation cannot be predicated on the same basis as a building constructed for general . . . use. In the case of a specialty there is a limited market and the customary testimony of market price is not available. It has been held under such circumstances that reproduction cost, or replacement cost, minus depreciation, may be considered. [4 Nichols, *Eminent Domain*, Sec. 12.-32(3)(b) at 12.377–78 (3d ed.).]

See, e. g., *State Dept. of Hwy. v. Barber*, 238 La. 587, 115 So. 2d 854 (1959). Another rule appears in *State v. First Methodist Church*, 6 Or.App. 492, 488 P.2d 835, 837 (1971), where the Oregon Court, after noting the above cited rule from Nichols, stated: "Recent cases indicate its use has been limited to cases where the property taken performs a legally necessary function" (that is, that the public body has a continuing legal duty to operate the facility and thus to replace it when it is no longer of use).

This latter rule we believe is too strictly limiting in its operation. We believe a well informed and prudent buyer interested in buying defendant's water would be certain to look at how much it would cost him to obtain the same type of water in the same quantity elsewhere, and that replacement cost would thus influence market value, that is, what a willing buyer would pay to a willing seller. Also, the consistent testimony throughout this case is that replacement cost in one of the accepted and commonly-used approaches to valuation by appraisers.

We perceive no fatal inconsistency in defendant's reliance on the *Kennecott* and *Arthur* approach, which presupposes the absence of an open market for defendant's property, as well as defendant's use of comparable sales of water rights in other aquifer basins as evidence of value of its water or water rights. Defendant did not use these comparable sales to demonstrate that there was in fact a market in its aquifer basin for its water rights, but rather to illustrate the value thereof in nearby aquifer basins as one guide to the jury in determining just compensation.

Affirmed. No costs awarded.

MAUGHAN, J., and SAWAYA, District Judge, concur.

ELLETT, Chief Justice (dissenting).

I cannot agree that the Salt Lake City Corporation should pay $50,000 for water which it did not condemn. Our statute[1] provides for the recompense to the owner in condemnation proceedings as follows:

(1) The value of the property sought to be condemned.

(2) If the property sought to be condemned is only a part of a larger tract, the damages which will accrue to the part not taken by reason of its severance.

1. 78–34–10, U.C.A., 1953.

(3) The damage occasioned by the proposed construction, although no part is taken.

(4) The benefit to the part not taken is to be deducted from the damage set out under (2) above.

It is now well settled law in this state that damage to a going business is not compensable. The amount to be paid for the land taken is the market value thereof valued at its highest and best use, and it is of no consequence whether the owner can or cannot make a profit by his own efforts and ingenuity. He gets no pay for that.

Water which is appurtenant to land passes with the land unless reserved in the deed or grant.[2] In the instant case, the water was not appurtenant to the land. It was used in the business of the landowner, to wit: for the washing of wool. Therefore, the water would not pass with the land even though a deed without a reservation were given.

In this case, the city did not condemn the water and, therefore, did not get any right to it. The landowner still owns the right to use the water. It can sell it to others and can change the point of diversion so long as that new point is still over the aquifer in which the water is stored.[3]

The only possible damage to the landowner would be the small fee payable to the state engineer for permission to change the point of diversion plus the cost of digging a new well, together with the cost of having an engineer certify that the water rights had been proved upon. However, it should be observed that the landowner had already been paid $635,694 for the value of the land, the well (including the piping), the plumbing connections, and all reservoir facilities in connection with the well and the diversion of the water. The expert witness for the city testified that a new well could be drilled for a cost of not to exceed $8,000.

The state engineer testified that there was no value to the water because the area was open to drilling and any person could obtain the same amount of water or more by simply filing an application and drilling a well.

All the realty and appurtenances affixed thereto had been paid for, pursuant to a stipulation between the parties. The only matter for trial was the amount which the city should pay to the landowner, if anything, for the value of the right to use the water—a right which the city did not get and which the owner retained.

It is not proper to attempt to fix values by adding various elements of value together. When full compensation has been paid, it is not permissible to allow additional compensation for a specific element which may give value. That element would have to be considered in connection with all other matters, and the value of the property taken would then be determined at one time and not by adding together the piecemeal values.[4]

The water was not appurtenant to the land; it was not applied thereto. Instead, it was appurtenant to and used in the business of the landowner. Where water is available for the taking, there will be no value of it beyond the cost of possessing it. In this case, the value of the well and all appurtenances used in getting possession of the water was paid for in full. I think the landowner in this case has been fully paid for any damages he sustained by reason of the condemnation proceedings. I, therefore, would reverse the judgment of the trial court but would not award costs to either party.

CROCKETT, J., concurs in ELLETT's, C. J., dissent.

HALL, J., does not participate herein.

2. 73–1–11, U.C.A., 1953, as amended.

3. 73–3–3, U.C.A., 1953, as amended.

4. 29A C.J.S. Eminent Domain § 136(8).