265 P.2d 630

STATE, By and Through Its ENGINEERING COMMISSION, et al.

v.

PEEK et al.

No. 7867.

Supreme Court of Utah.

Dec. 23, 1953.

265

C. C. Parsons, A. D. Moffat, Calvin A. Behle, Salt Lake City, for appellants.

E. R. Callister, Atty. Gen., Jesse R. S. Budge, Special Atty. Gen., for respondents.

WADE, Justice.

Action by State of Utah through its Engineering Commission to condemn a tract of land near the "This is the Place" monument for State Park purposes. This appeal concerns only the part of such tract which belongs to the Charles H. Deere Estate now being held in trust by Burton F. Peek and Charles D. Wiman, appellants here. The tract comprises more than 200 acres. The first Special Session of the 1951 Legislature directed the Commission to condemn this tract forthwith. It lies across the entrance of Emigration Canyon, east of Salt Lake City and is traversed from east to west by State Road No. 65, which goes up the bottom of the Canyon, the walls of which rise abruptly on each side to more level ground.

Several roads and drives pass over parts of the tract and part of the north side of the tract has recently been platted into residential subdivisions with lots, blocks and appropriate roads, drives and circles. A few homes had been built on some of the lots which defendants had previously sold. A business district was planned to adjoin State Road No. 65; another part on the south side of the road where the canyon is wider than usual had been improved and was being operated as a miniature golf course with other amusements. On the north side of the canyon and east of the residential district high above the road was a spring area, where defendants had developed a water works, with a concrete reservoir, metal water tanks, fire hydrants and pipelines to furnish water for the subdivision, and other property.

Plaintiffs, by their complaint, divided the tract to be condemned into 28 parcels, each parcel belonging to a different defendant. Appellants' property was designated Parcel No. 28, and contained about three-fourths of the entire tract. Except for the fact that it is intersected by State Road No. 65, and Kennedy Drive, it is all within one closed boundary line, every part is contiguous with another part, it covers parts of all the various sections of the whole tract, and there is an isolated block of adjoining lots scattered over the platted residential subdivisions on the north side of the State Road. Adjoining the State Road on the south near the east boundary line was the miniature golf course and a parcel protrudes into the condemned property from the north side near the center of the tract containing several acres which were planned as a future residential subdivision. The condemned tract was in almost every stage of development—from occupied residences on completely hard surfaced drives with curb and gutter to mountain sides, in their native state, some of which are probably incapable of being used or improved. But none of this appellants' property was occupied by any building or improvements except for roads, streets, drives, the water system and other public utility improvements.

Prior to the trial the appellants made a motion that their property be severed into six different parcels in accordance with the nature and kind of property and the uses to which they claimed that the various parcels were adapted. The court thereafter did divide such property into two parcels, making parcel I the same as appellants' proposed parcel I, and all the rest of appellants' property was made into parcel II. The accompanying map shows the property which was condemned together with the roads and drives as they existed and the planned roads and drives. The parts in white are properties which do not belong to these defendants; the parts in black are parcel No. I and in perpendicular lines are parcel No. II...

Appellants contend, (1) that the court improperly refused to allow interest on their judgment from the date of service of sum-

mons in the action, (2) that the court improperly refused to allow them either by direct evidence or cross-examination to show the sale price of comparable property, or to test the credibility of plaintiffs' witnesses by inquiring into the value placed on the various parts of appellants' property by plaintiffs' witnesses, (3) that the court improperly excluded expert testimony of the value of their waterworks system, (4) that the court improperly refused to divide appellants' property into more than two parcels, and (5) that the court improperly excluded the issue of severance damages.

■ Appellants are not entitled to interest on the judgment prior to the time when actual possession was taken. This

court has uniformly so held.[1] Appellants argue that this case is different from those cases in that here their property being unoccupied it cannot produce income, rents or profits except from the development and sale of the lots and that any improvement after the service of summons cannot be included in the recoverable damages and that the possibility of obtaining buyers for this property was by the service of summons eliminated. That argument is true to a greater or less extent in every condemnation case. Where the owner beneficially uses the property, either as a home or in his business, or where the property is rented until possession is taken, the commencement of an action to condemn only slightly interferes with the owner's use of the property prior to that time. But even in that kind of a case the possibility of the property being bought and sold on the open market is practically eliminated by the service of summons in a condemnation case.

The case of Oregon Short Line R. Co. v. Jones, supra, where this question was carefully considered and initially decided in this state, was in many respects similar to this case. There the property condemned was apparently unoccupied vacant lots; the appellants there, as here, argued that under Section 3599, R.S.1898 (now Section 78–34–11, U.C.A.1953),[2] the right to compensation accrues and is due on the date of the service of summons and that no improvements placed on the property after that date can be included in the damages and thus the service of summons constitutes such an interference with the owner's full enjoyment of the property as to amount to a taking within the meaning of our constitution where it provides that "Private property shall not be taken or damaged for public use without just compensation." [3] The court in that case conceded that property might be damaged by a public improvement although not actually taken, in which case the owner would be entitled to damages, it being held that Section 3599 fixed "the time with reference to which compensation is to be computed, rather than fixing the time of the taking, or when the property shall be deemed to have been taken." [29 Utah 147,

1. See Oregon Short Line R. Co. v. Jones, 29 Utah 147, 80 P. 732; Kimball v. Salt Lake City, 32 Utah 253, 90 P. 395, 10 L.R.A.,N.S., 483; San Pedro, Los Angeles and Salt Lake Railroad Company v. Board of Education, 35 Utah 13, 99 P. 263; Salt Lake & U. R. Co. v. Schramm, 56 Utah 53, 189 P. 90; State By and Through Road Commission v. Danielson, Utah, 247 P.2d 900.

2. "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of summons, and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed, as provided in the next preceding section. No improvements put upon the property subsequent to the date of service of summons shall be included in the assessment of compensation or damages."

3. Constitution of Utah, Article I, Section 22.

80 P. 734] The court concuded that under our statute, as to property which is actually taken as distinguished from property which is damaged by a public improvement, interest on the award is allowed only from the date of the actual taking and not from the service of summons.

Appellants further argue that failure to allow such interest constitutes a taking of private property for a public use without just compensation, in violation of Article I, Sections 7[4] and 22[5] of the Utah Constitution and the Fourteenth[6] and Fifth[7] Amendments to the Federal Constitution. There are many cases which allow interest from the beginning of the condemnation proceedings even though the owner retains possession. Such cases require him to account for the income, rents and profits of the land during that period. Some of them cite the above mentioned Federal Constitutional provisions and State Constitutional provisions similar to ours above cited in support of such holding.[8] Some of such cases require a showing on the part of the land owner that he has been deprived of profits during the period in question[9] which he would have made had the suit not been commenced, and that such profits were not included in the damages which were awarded.[10] The record here does not show that such proof was made in this case. Appellants have cited no case and we have found none which holds that where under the state law the taking occurs when the possession of the property is actually surrendered, and not when the suit was commenced, that the failure to allow interest from the time of the commencement of the action constitutes a violation of these constitutional provisions, but a number of courts, including the Supreme Court of the United States, have held to the contrary.[11] So we will adhere to our previous rule that interest is recoverable only from the time of taking possession of the property.

■ The trial court excluded on both direct and cross-examination evidence of the purchase price paid in recent sales of property similar to parts of appellants' property. It also excluded on both direct

4. That Section provides that: "No person shall be deprived of life, liberty or property, without due process of law."

5. That Section is quoted above at Note 3.

6. The part of the Fourteenth Amendment referred to says: " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law".

7. The part of the Fifth Amendment referred to says: " * * * nor shall private property be taken for public use, without just compensation."

8. See Annotation in 32 A.L.R. 98, Subdivisions I and II, also in 96 A.L.R. 150 to 206, Subdivision VIII a and b; also 111 A.L.R. 1304 to 1306, Subdivision VIII a and b.

9. See Annotation in 32 A.L.R. 98 at 105, Subdivision VII.

10. See Annotation in 32 A.L.R. 98 at 104, Subdivision V and VII.

11. See Shoemaker v. United States, 147 U. S. 282, 13 S.Ct. 361, 37 L.Ed. 170, Annotation in 32 A.L.R. 98, 100, Subdivision III.

270

and cross-examination evidence of the value of the various elements, items and parts of appellants' property being condemned in this action. The court rejected appellants' offer to show by its own witnesses the purchase price paid to them in sales made prior to the commencement of this action of some of the lots owned by others now being condemned which are located intermittently between the lots which belong to appellants and are now being condemned in this action. It also rejected their offer to prove by their witnesses the price paid in a recent sale as acreage of a neighboring subdivision before it had been platted or developed into a residential subdivision, and rejected their offer to prove by their own expert witness the value of their waterworks system which is a part of the property being condemned. On cross-examination of respondents' expert witnesses of the value of appellants' property, after allowing them to testify that certain parts were considered by them as elements or items which went to make up their overall value of appellants' property, and that they knew of the sale of other property similar thereto, the court refused to allow appellants to cross-examine such witnesses on the value they placed on such items in determining their overall value of appellants' property and refused to allow them to cross-examine such

witnesses on the purchase price which was paid for other similar property in the sales that they admitted they knew of and had considered in fixing the overall valuation. This was prejudicial error. None of this evidence was rejected because appellants failed to establish a proper foundation for its reception, the court apparently adopting the theory that the law excludes all of this evidence and that this cannot be changed regardless of what foundation is established. So we do not now pass on the sufficiency of the foundation laid for the rejected evidence but assume that had that been the grounds of the rejection it would have been supplied. In this discussion we are covering points (2) and (3) in the above statement of appellants' contentions because of their close relationship to each other, but we will divide our discussion into different parts.

■ Apparently this court has never directly passed on the question of whether evidence of the price paid for other similar property is admissible as evidence to show the value of the property in question.[12] The decisions from other jurisdictions on that question are in a hopeless state of conflict and confusion, but all concede that familiarity with other sales may constitute the source of the knowledge of witnesses who are qualified to give an opinion on the

12. See Telluride Power Co. v. Bruneau, 41 Utah 4, 125 P. 399, where we said that under the facts of that case plaintiff was not prejudiced even though it be assumed that on direct examination it is proper to show the sales of other lands in order to establish the value of the lands in question.

value of such property.[13] Without this evidence the jury is deprived of a valuable source of information on the value of the property, and are greatly handicapped in evaluating the weight and credibility which should be given to the opinion evidence. Most jurisdictions receive this class of evidence. An excellent discussion of the problem involved and a correct statement of the law is contained in 2 Wigmore on Evidence, Third Edition, 503 to 507, Section 463, where it is said:

"* * * For evidential purposes, Sale-Value *is nothing more than the nature or quality of the article as measured by the money which others show themselves willing to lay out in purchasing it. Their offers of money not merely indicate the value; they are the value; i. e. since value is merely a standard or measure in figures, those sums taken in net potential result are that standard.*

*         *         *         *         *         *

"There is, however, one question indirectly involving a rule of Evidence,— the question whether the value of *another article* is receivable in order to show the value of the *article in issue.* * * *

"In answering this question, it is found that the two leading principles already expounded come into joint application,—the principle of Relevancy and the principle of Auxiliary Policy. * * * According to the former, the value of sale-price of the other property is relevant only when the property is *substantially similar in conditions;* according to the second, it may be excluded, though relevant, if it involves in the case in hand a disproportionate *confusion of issues* and loss of time.

"The latter consideration has weighed so much with a few Courts that they have treated it as requiring the absolute and invariable exclusion of such evidence * * *.

*         *         *         *         *         *

"It is enough to note (1) in answer to the argument from Relevancy, that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; all the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy; (2) in answer to the argument from Auxiliary Probative Policy, it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow the trial Court in its

13. See Central Pacific Railroad Company of California v. Pearson, 35 Cal. 247, at page 262; Greenleaf on Evidence, Section 448, and later quotations from Wigmore on Evidence and Nichols on Eminent Domain.

discretion to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it, * *.

"Except in a few jurisdictions, this class of evidence is received. In Massachusetts and in New Hampshire the principle of leaving the matter to the *trial Court's discretion* to determine both the substantial similarity of conditions and the confusion of issues is well carried out. In some jurisdictions its use is limited to the testing of value-witnesses on *cross-examination.* * *"

To the same effect see 5 Nichols on Eminent Domain, 269 to 277, Section 21.3, where it is said:

"Upon the question whether the price paid at voluntary sales of land similar to that taken at or about the time of the taking is admissible as independent evidence of the value of the land taken there is a conflict of authority. It is held in most jurisdictions that such evidence is admissible; but the courts of some of the states have at some time or another taken the contrary view and have excluded such evidence on direct examination.

"Such evidence is capable of direct proof; it has considerable probative value. Market value is, of course, the price at which an article sells in the open market. This price is fixed by sales actually consummated. Such sales, when made under normal and fair conditions, are necessarily a better test of the market value than the speculative opinions of witnesses; * * *.

"It is argued in opposition to such evidence that it introduces a multitude of collateral issues. As no two pieces of land are ever exactly alike, the jury, instead of devoting its attention to the land in controversy, must compare it with the land the price of which is in evidence. It must decide whether the lands were really similar, whether to believe the testimony offered in regard to its price, whether the price was affected by the necessities of the parties, and whether values have changed in the neighborhood since the sale was made. There is danger of diverting the minds of the jury from the real issue by their consideration of these collateral points, of the waste of unnecessary time by the introduction of them in court, * * *.

"It must be remembered, however, that the comparison is made with lands which are *similar* to the land taken. Of course, since, in fact, no two parcels are exactly alike, only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities. * * * It is evident that there may be considerable difference in the size, shape, situation, and immediate surroundings of two estates, and perhaps in other respects, and yet the price which one brought may be of substan-

tial assistance in determining the value of the other. * * *

"* * * If the admission of such evidence is regulated with reasonable judgment by the presiding justice, it throws light upon the issue before the jury as nothing else can. * * *

"Even in the states which reject sales of similar lands as independent evidence of value, it is usually held that on the cross-examination of an expert witness testifying as to value, for the purpose of testing his knowledge of the market value of land in the vicinity, he may be asked to name such sales of property and the prices paid therefor, as have come to his attention."

Thus the price paid for similar lands, if the time of such sale and location of the lands are sufficiently near and the sale is made without compulsion, is admissible in evidence on direct examination to show the value of the lands in question. However, to be admissible there must be a similarity between the two properties, even though they do not have to be identical in size or shape or possible uses, but there must be sufficient similarity in these respects and in proximity in time of sale and the location of the properties to satisfy the trial judge that such evidence will be helpful to the jury in determining the value of the property in question. This is a preliminary question for the trial judge to determine before such evidence is admissible, and his determination should be followed by the appellate court in the absence of an abuse of discretion. It is also within the sound discretion of the trial judge to limit the amount of such evidence in the interest of avoiding confusion of the issues and the undue consumption of time.

Also, evidence of the price paid for similar property is admissible on cross-examination of witness who have submitted an opinion of the value of the property in question. This is allowed by most courts even in jurisdictions which exclude such evidence on direct examination. Where such direct evidence is admissible to show the value of the property in question it is also admissible for that purpose on cross-examination, it is also admissible to test the qualifications of the witness to testify as to value, for impeachment purposes and to determine the weight and credibility to be given to such opinion evidence. There is no other instrument so well adapted to discovery of the truth as cross-examination, and as long as it tends to disclose the truth it should never be curtailed or limited. Any inquiry should be allowed which an individual about to buy would feel it in his interest to make.[14] On cross-examination a showing of the witness' knowledge of other sales of similar property should be allowed with the details of such sales and the items which such witness used in ar-

14.  See Little Rock Junction R. Co. v. Woodruff, 40 Ark. 381, 5 S.W. 792, 4 Am.St.Rep. 51.

riving at his valuation of the property. This would at least require a disclosure of the amount received in such other sales and the amount of each item used by the witness in arriving at his overall valuation.[15] In 5 Nichols on Eminent Domain, 183, Section 18.45(2), it is said:

"The scope of the cross-examination of experts and other witnesses who have testified to value in land damage cases is very broad, since cross-examination is often the only protection of the opposing party against the unwarranted estimates .that a certain class of mercenary experts is wont to indulge in. A witness may be asked on cross-examination any facts which would be admissible on direct examination, * *. A witness who has given an opinion of value may, however, in the discretion of the court, be asked questions on cross-examination, for the purpose of testing his opinion, which would be improper upon direct examination. He may, for example, be asked how far certain assumed facts would modify his judgment, or be required to state his opinion as to the value of similar lands in the neighborhood, * * *. When sales of comparable properties in the vicinity of the property involved have been testified to on direct examination or are the basis of a witness' opinion as to value, cross-examination as to such sales is proper for the purpose of testing his knowledge of market values or lessening the weight of his opinion. * * *

"The opinion of a witness may be impeached by showing that his acts are inconsistent with his words, as for example by showing that he has offered the same or similar property for sale at a price far different from what he now says it is worth, or he may be asked whether he has not made inconsistent statements upon the same point upon other occasions. He may be asked what the owner paid for the property or what he has been offered for it. Should the fact stated be material, and should the witness, after having been afforded a reasonable opportunity for explanation, deny the making of the statement mentioned, the fact may be proved by other witnesses at a later stage.

"Cross-examination of an opinion witness may embrace an investigation of the qualifications of the witness, the extent of his knowledge, the reasons for his opinion, and the factors upon which his opinion is based."

▮▮▮ The court also erred in excluding appellants' opinion evidence on the value of their waterworks system. Appellants'

---

15. See Brown v. Calumet River R. Co., 125 Ill. 600, 18 N.E. 283; Edmonds v. City of Boston, 108 Mass. 535; Cobb v. City of Boston, 109 Mass. 438; Dorrity v. Russell, 7 Bosw., N.Y., 539; Snouffer v. Chicago & N. W. R. Co., 105 Iowa 681, 75 N.W. 501.

witness showed himself qualified to give an expert opinion on that question. He also testified that this system was capable of being used in connection with property outside of appellants' lands. Respondents' witnesses testified that this system was an item which they considered in arriving at their overall value of appellants' property, but the court refused to allow appellants to develop on cross-examination the amount such witnesses allowed in making such determination. Respondents objected to this evidence on the ground that there was no showing that appellants had any water right but the court excluded the proffered evidence without giving appellants an opportunity to make a showing of such ownership apparently on the ground that such evidence was not admissible even if such showing were made. Respondents' own witnesses treated this as a valuable property right of appellants. It undoubtedly would have aided the jury in determining the true value of appellants' property had all of these details been shown to them, for certainly they could more accurately assess the valuation of this property if they had before them the value which the experts placed on this system in arriving at their overall value of the property, and could test such valuation by comparison with the

opinion of an expert on the value of that kind of property. The value of such a utility is especially one which calls for expert opinion because such property is not bought and sold every day on the open market, so expert opinion thereon is almost mandatory.[16]

▮ The court did not err in dividing this property into only two parcels instead of six requested by appellants. Parcel I as the property was divided by the court was the same as appellants' requested Parcel I, and the court divided the rest of appellants' lands which were taken into Parcel II. Appellants argue that where land is platted into residential lots each lot constitutes as a matter of law a separate parcel, but they are not in a position to urge this here because they have requested no such division. Parcel I, which is the same as their proposed Parcel I, contains all of the platted residential lots. All of those lots were platted and were being used as a unit in a project to divide and sell such lots as residential property and the court was therefore justified in making the division as it did.

▮ The court erred in striking from appellants' answer the allegations that the property sought to be condemned was only

16. See 5 Nichols on Eminent Domain, 197, Section 18.47, where it is said: "Where the public utility, as such, is taken over, the valuation of such utility by experts is almost mandatory in all cases since it is quite obvious that valuations cannot be based in such cases on sales or on values at which such property is held in the vicinity."

a part of a larger tract of land owned by them and that the severance of the part taken from the part not taken caused damages to the tract not taken. The court seemed to hold that appellants' answer alleged that there were six complete parcels of land within the property sought to be condemned and that such allegations preclude the possibility of a severance of the property sought to be condemned from other property not taken as a part of a larger parcel of land owned by appellants. The word "parcel" as used in the two allegations has a different meaning. The stricken paragraph clearly alleges that the land sought to be condemned is a part of a larger tract owned by appellants and that the part not taken would be damaged by being severed from the part taken. There is nothing in the record that shows as a matter of law that this allegation is not true so appellants were entitled to the opportunity to have that issue tried. They were prevented therefrom by the court striking this paragraph from the pleadings. This paragraph should be restored and considered a part of the pleadings.

The judgment is reversed with direction to grant a new trial and to proceed therein in accordance with this opinion. No costs awarded.

WOLFE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., concurs in result.