352 P.2d 693

**SOUTHERN PACIFIC COMPANY, a corporation, Plaintiff and Appellant,**

v.

**Mrs. Helen Sheehan ARTHUR and Mrs. Glenera Sheehan HUNTER, Defendants and Respondents,**

v.

**Nick CHOURNOS, and wife, Defendants and Respondents,**

v.

**Milton A. OMAN, et al., Defendants and Respondents and Cross-Appellants.**

No. 9123.

Supreme Court of Utah.

May 25, 1960.

Ray, Quinney & Nebeker, W. J. O'Connor, Jr., Salt Lake City, for appellant.

Walter G. Mann, Brigham City, Milton A. Oman and Herschel J. Saperstein, Salt Lake City, for respondents.

WADE, Justice.

This is an appeal by the Southern Pacific Company from verdicts and judgments based thereon in three separate condemnation actions commenced by it for the acquisition of sand and gravel deposits on the lands of defendants and respondents. With the consent of all the parties the actions were consolidated for purposes of trial. Only the defendants and respondents in the action against Milton A. Oman, et al. cross-appeal.

The appellant is a railroad corporation, part of whose interstate rail line crosses over Great Salt Lake in Box Elder County, Utah. In building its new railroad bed running west across Great Salt Lake from Promontory Point in Box Elder County, appellant found it necessary to institute these condemnation suits against the fee owners and the claimants of two mining claims of lands situated on Promontory Point to obtain the sand, gravel and other materials for its fill. In the suits against the fee owners judgments were granted for damages, both for the taking of the sand and gravel and for severance or consequential damages to the sheep operations of the owners and their lessees. No severance or consequential damages were granted in the suit against the mining claimants.

Appellant contends that the damages granted for the taking of the fill materials from respondents is not based on competent evidence of the market value of such materials because the testimony of the witnesses failed to establish present market value, but instead was based on future or speculative value.

A careful study of the record reveals that respondents' witnesses were either in the business of appraising or in the contracting and sand and gravel business, and as such had opinions as to the value of

fill materials such as were taken from respondents under similar conditions where the only market value would be created by the need in particular construction projects in remote areas. These witnesses testified that in their opinion the fair market value of the gravel in place at the times possession was taken under the condemnation proceedings was 5¢ per cubic yard, (a cubic yard weighs about 2,700 pounds) and the jury found the value to be 3¢ per cubic yard. In arriving at their conclusions those witnesses who were in the contracting and sand and gravel businesses based their conclusions in part on what they had paid in voluntary transactions in the western states for like materials in remote areas when they needed sand, gravel and kindred materials for their projects. In arriving at the prices they were willing to pay to sellers who were willing to sell they took into consideration the availability and the distance from the place of consumption of the materials needed for the particular project. One witness introduced an exhibit showing that the average price his company paid for gravel and sand within six years prior to the taking in the instant case was approximately 5¢ per cubic yard and he testified that in many instances there had been no need for the materials until his company needed and purchased them for the particu-lar projects involved. The fact, however, that the transactions upon which this opinion was based ranged over a period of six years did not make it incompetent.[1] True, some of respondents' witnesses upon cross-examination testified that in their opinion there would be a growing demand and a diminishing supply of sand and gravel close to the points of expected projects, however, it is clear their opinions as to the value of the materials were based primarily on the need a similar project in a remote area would create and were not based on future or speculative values.

The question to be determined in this case is whether under the circumstances shown the evidence was of such a nature from which there could reasonably be found what would be "just compensation" by the appellant to the respondents for the property taken because our constitution forbids the taking of private property for a public purpose without just compensation,[2] and therefore the measure of damages is "just compensation." The standard of what is "just compensation" in the ordinary case is the market value of the property taken, that is what a willing buyer would pay to a willing seller. Where proof of market value, however, is not readily ascertainable because there is little possibility of a sale on an open market, opinion evidence of what

1. Weber Basin Water Conservancy Dist. v. Ward, et al., 10 Utah 2d 29, 347 P. 2d 862.

2. Utah State Constitution, Art. I, Sec. 22.

the property would probably sell for on the market if there were others who could use it would be a proper basis for determining such value. A similar problem was presented in Kennecott Copper Corporation v. Salt Lake County, et al.,[3] which involved the valuation of tailings dumps for tax purposes. This court said in that case that the reasonable "fair cash value" at which the property had to be assessed was its "market value" and in finding its "market value" the same factors should be considered as those entering into a determination of "just compensation" in eminent domain proceedings. This court then pointed out that the tailings dumps would be of little or no value to anyone other than the Kennecott Copper Corporation in connection with its milling operations and there would probably be no sale for it on the open market. This fact, however, did not make the property valueless, instead its value could be ascertained from the opinions of well-informed persons as to what reasonable purchasers would be willing to pay for the property on the open market should they find it suitable for their purposes. Such was the method of proof used by the respondents in the instant case. Most of the witnesses were well-informed persons who were engaged in construction and sand and gravel businesses whose experience in obtaining such materials in *similarly* remote areas where the problems would be like those confronting appellant eminently qualified them to give opinions as to what price a willing buyer would pay to a willing seller under these circumstances. At this point it would perhaps not be amiss to point out that prices paid for similar property is admissible to show value of the property being taken in condemnation proceedings, if the court in its discretion finds that its admission will aid the jury, and that it is certainly admissible as showing the source of knowledge upon which opinion evidence has been based.[4] We conclude, therefore, there was sufficient competent evidence of market value to sustain the judgments for the materials taken.

Appellant also contends that the court committed prejudicial error in submitting the question of severance damages to the jury because (1) no competent evidence was produced that other similar lands were unavailable; (2) the damages were upon lands not owned by respondents; (3) the evidence was of damages purportedly suffered to a business and (4) the damages were arrived at by adding the values of different uses for the land taken.

Sec. 78–34–10 U.C.A.1953, providing the manner in which damages must be assessed in condemnation proceedings, reads:

"The court, jury or referee must hear such legal evidence as may be of-

3. Kennecott Copper Corporation v. Salt Lake County, et al., 122 Utah 431, 250 P.2d 938, 939.

4. State, By and Through Its Engineering Commission v. Peek, 1 Utah 2d 263, 265 P.2d 630.

fered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"(1) The value of the property sought to be condemned and all improvements thereon appertaining to the realty, and of each and every separate estate or interest therein; and if it consists of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed.

"(2) If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

"(3) If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.

&ast; &ast; &ast; &ast; &ast;

"(5) As far as practicable compensation must be assessed for each source of damages separately."

■■ The record discloses that respondents own considerable acreage on Promontory. They are range lands and have been used by the owners or their lessees for winter and spring pasture of sheep. Promontory is a peninsula which extends from the north out into Great Salt Lake. The lands of respondents lie on both sides of Promontory Mountain which projects southward into the north end of Great Salt Lake and extend generally from the lake shore on the east to the lake shore on the west. In grazing on Promontory Mountain during the winter and lambing season in the spring the sheep move back and forth from one side of the mountain to the other in search of feed and water. The only crossing available to the sheep from the east side to the west side of respondents' land and vice versa was through Little Valley, which extends from the west lake shore due east to the head of Maple Canyon. It was in Little Valley that the pits were made from which the fill materials were taken from respondents. The largest pit, which is about two miles long, was dug out in the center of Little Valley canyon and extends all the way across. Its banks are high and precipitous so that sheep can no longer cross Little Valley back and forth naturally while in search of food and water. The condition in which it is left is also very dangerous to the lives of sheep and lambs which when frightened are likely to plunge over the rim of the lands they have been grazing and get killed. Besides the danger to lives, which the pits have created, they have destroyed forage and natural access

to stream or spring water on the west side of Promontory Mountain in the late winter or spring when the snow has melted on the east side of the mountain and it is dry. This is so because sheep and lambs will not by themselves travel long distances for feed or water. The respondents' lands on Promontory are so located and intermingled that a grazing use means an intermingled use of all the lands and all of Little Valley. Thus the pits affected all the owners' lands for grazing purposes and not just the operations on the particular acreages from which sand and gravel was taken.

Under the above facts evidence of the unavailability of other lands would be immaterial, because the damages to the remaining lands cannot be mitigated by obtaining other lands in other places which could serve in this unified operation the same purpose as the lands from which the sand and gravel was taken for the use to which the lands were suitable. Rather the evidence revealed that the damages were of a special kind to the grazing use to which the range lands owned by respondents were fitted and therefore even though there had been no actual taking of any lands they were entitled to just compensation under the provisions of paragraph 3 above, for diminution of value of their lands by the substantial injury done to the only avail-

able natural crossing and lambing grounds.[5] This would be true, even though the actual physical damage had been done to disproportionate parts of the lands owned by each respondent.

There is also no merit to the contention that the evidence related to damages suffered to a business. The evidence was that the value of respondents' remaining lands which were used for sheep grazing purposes were substantially diminished by the condition in which the land was left after the taking of the fill materials, since the value of range lands depend on factors peculiar to its use and a person buying from a person willing to sell would take all such factors into consideration in determining what he would be willing to pay. Appellant's last contention that the damages were arrived at by adding the values of different uses for the land taken is not supported by the record. Damages were given for the value of the materials taken and for damages for substantial injury to the lands owned by respondents for the use for which they were suitable due to the condition in which the land was left after the taking of these materials.

The trial court considered the verdict of the jury for the consequential or severance damages excessive because it indicated that it would grant a new trial on that phase of

5. State by State Road Commission, et al., v. Fourth Judicial District Court, et al., 94 Utah 384, at page 393, 78 P.2d 502; State, et al., v. Ward, et al., 112 Utah 452, 189 P.2d 113.

the damages unless the respondents here would consent to remit one-half of such awards. Respondents agreed to such remittance. One-half the awards granted by the jury for the severance damages appears to be reasonable and therefore the court should grant respondents the full amount found by the jury as the value of the materials taken and one-half the amount found by the jury as damages to the remaining lands of respondents.[6]

◼ The Omans and Chournoses have cross-appealed from the order of the court permitting appellant to deposit with the clerk of the court a check in payment of the awards granted for the materials taken from the mining claims pending a determination of the validity of mining claims before the United States Department of the Interior. It appears that the parties stipulated before trial that the damages could be ascertained but that the question of title on the mining claims be held in abeyance until there was a final Federal ruling on that question. The parties having stipulated that the question of damages could be tried for the convenience of all the parties concerned before the question of title was tried and determined by the court, the court did not err in making its order that appellant deposit the awarded damages with the clerk of the court pending such determination at some future time.

Affirmed. Costs to respondents.

HENRIOD, McDONOUGH and CALLISTER, JJ., and RAY VAN COTT, JR., District Judge, concur.

CROCKETT, C. J., having disqualified himself, did not participate herein.

---

6. State By and Through Road Commission v. Noble, 8 Utah 2d 405, 335 P.2d 831.