366 P.2d 76

STATE of Utah, by and through its ROAD COMMISSION, Plaintiff and Respondent,

v.

Alice H. PETERSON, Merlin Romer and Margrett Romer, his wife, Defendants and Appellants.

No. 9436.

Supreme Court of Utah.

Nov. 7, 1961.

Glen E. Fuller, Scott D. Allen, Salt Lake City, for appellants.

Walter L. Budge, Atty. Gen., Robert S. Campbell. Jr., Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Defendants appeal from a jury award of damages for condemnation of their farm lands near Elwood in Box Elder County in connection with construction of interstate freeway 15.

The right of eminent domain in the State Road Commission to condemn the lands was conceded. The defendants then in effect became plaintiffs with the burden of establishing their damages and the action so proceeded for that purpose.

The new highway runs diagonally through defendants' tracts of farm lands. Of the Peterson's tract of 77.07 acres, the freeway and an irrigation ditch easement necessitates taking 12.76 acres; of Romer's tract of 41.0 acres, 11.45 acres is required for that purpose.

The highest estimate of damages was by each of the defendants as their own lands.

Alice H. Peterson gave these figures:

```
(1) 12.76 acres @ $1,000 per acre....$12,760.00
(2) Damage to remainder...........  22,000.00
              Total ............................$36,760.00
```

Merlin Romer gave these figures:

```
(1) 11.45 acres @ $1,000 per acre....$11,450.00
(2) Damage to remainder...........  11,640.00
              Total ............................$23,090.00
```

The jury made a more modest appraisal of defendants' damages, but well within the evidence presented by plaintiff, and made its award as follows:

Peterson:

```
(1) 12.76 acres @ $700.00 per acre...$ 8,932.00
(2) Damage to remainder...........  8 400.00
              Total ............................$17,332.00
```

Romer:

```
(1) 11.45 acres @ $700.00 per acre...$ 8,015.00
(2) Damage to remainder...........  5,525.00
              Total ............................$13,540.00
```

The principal attack the defendants make on the judgment is that the trial court committed error in refusing to permit their expert witness, Mr. Thomas Baum, to support his opinion that the lands were worth $950 per acre by testifying to other sales of lands in the locality. In sustaining objection to this testimony the court stated that the evidence was hearsay and would be competent only if the witness were a party to the transaction or involved in it in some manner, such as being counsel for one of the parties. Defendants urge upon us the importance of a decision on this question because of the frequent disputes over the method of proof of property values in such actions.

In the case of State v. Peek,[1] this court through Chief Justice Wade sanctioned evidence of other sales subject to the condition that it be shown that there is sufficient similarity between the properties. In re-

1. State By and Through it's Engineering Comm. v. Peek, et al., 1953, 1 Utah 2d 263, 265 P.2d 630.

gard to similarity: it must be realized that parcels of real estate cannot be absolutely alike in all respects including their location. Nevertheless, in order for evidence of other sales to be admissible, it should appear that the lands are generally similar, particularly as to factors having a bearing on value: that they are in the same locality; are similarly situated; have the same or similar actual or potential uses; are of about the same fertility, if that factor is pertinent; that the other sale was voluntary on the part of both buyer and seller; that the terms of payment were not so extended as to make a substantial difference in the price; and that it was close enough in time that circumstances had not so changed as to have that effect. It is the prerogative of the trial court to consider these factors and to determine whether the other transaction meets what has been termed the test of reasonable comparability: that is, whether it is sufficiently similar that the price paid for the other property can logically be regarded as having some probative value on the worth of the property in question.

If the above test is met, the opinion of the witness is not rendered objectionable because it is founded upon information which he may receive from others. To rule out all information upon which an opinion is formed as objectionable hearsay is a far cry from the basic legal concept of the hearsay rule. The ordinary hearsay prohibition involves a witness who is asked to relate some occurrence which was actually witnessed by and told to him by another. In such instance his testimony is disallowed as hearsay and it is deemed best to have the witness who perceived the occurrence testify under oath and be subject to cross-examination. But a great deal of information must of necessity be acquired from others. In fact practically all of the knowledge of which anyone is possessed, including such vital information as his own name, age, and parentage, comes from sources which, in the broad connotation of the term, might be called hearsay. This is also true of the accumulated learning of mankind, which has sufficient credibility that the conduct of our daily lives and the foundations of our civilization and culture rest upon it.

Any judgment as to the value of the property in question must be based on values of similar land in the locality, which in turn must be related to sales thereof. It would completely frustrate the use of expert witnesses if they were obliged to have been a party to each transaction or to have undergone all of the experiences and experiments which provide the knowledge upon which their opinions were based. The witness must have learned the constituent facts through the usual and various sources of information. The fact that Mr. Baum is an expert who devotes his time to that business is sufficient assurance that the information would not be distorted or mis-

used. If he did so, the frailty would be subject to exposure on cross-examination. But the important point is that his opinion depends not only upon his personal credentials, but largely upon the manner in which it was arrived at. It is thus of importance to the court and jury to know what it was based upon: i. e., other sales of similar property. Therefore we see no reason why he should not, within reason have been allowed to relate the foundation of his opinion.

In accord with our conclusion is the decision of the Court of Appeals, Fourth Circuit. In dealing with a practically identical problem, where such evidence had been erroneously excluded under the hearsay and best evidence rules, the court stated:

"The witness within reasonable bounds should have been allowed to give the jury the facts upon which his opinion as to value was based * * *. The hearsay and best evidence rules are important, but they should not be applied to prevent the expert witness giving in a reasonable way the basis of his opinion * * *. If [he] * * * has made careful inquiry into the facts, he should be allowed to give them * * *. If he had not * * * this will be developed on cross examination and will weaken or destroy the value of the opinion." [2]

■ We further observe that it is within the discretion of the trial judge to limit the amount of such evidence and the detail in which it may be pursued to avoid diversion from the main issues of the law suit and unduly prolonging the trial.

■ There remains the further problem of whether sustaining the objection to Mr. Baum's testimony was prejudicial. The evidence sought from him related to two sales of property in the locality which brought about $1,000 per acre: one by people named Richter; the other by a family named Nagao. After the objection was sustained, the facts concerning the two sales were brought out in other testimony. Mr. Richter was called and testified con-

2. United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, 662. This seems to be the leading case on this point and a majority of the cases considering the question have taken the same position. They include: City of St. Louis v. Vasquez, Mo., 1960, 341 S.W.2d 839; Stewart v. Commonwealth, Ky., 1960, 337 S.W.2d 880; State v. Arnold, 1959, 218 Or. 43, 341 P.2d 1089, 343 P.2d 1113; United States v. 63.04 Acres of Land, 2 Cir., 1957, 245 F.2d 140; District of Columbia Redev. L. A. v. 61 Parcels of Land, 1956, 98 U.S.App. D.C. 367, 235 F.2d 864; International Paper Co. v. United States, 5 Cir., 1955, 227 F.2d 201; and H & H Supply Co., et al. v. United States, 10 Cir., 1952, 194 F.2d 553. Contra: See United States v. Katz, 1 Cir., 1954, 213 F.2d 799, certiorari denied 1954, 348 U.S. 857, 75 S. Ct. 82, 99 L.Ed. 675; and City and County of Denver v. Quick, 1941, 108 Colo. 111, 113, P.2d 999, 134 A.L.R. 1120.

cerning his sale; and the facts about the Nagao sale were elicited on cross-examination of the State's witnesses. Furthermore, it was obvious that the information upon which Mr. Baum based his estimate of $950 an acre included his knowledge of the sales just mentioned. The evidence in question was thus for practical purposes before the jury and it was not disputed. We have previously held the exclusion of testimony from one witness, though it be error, is not prejudicial where similar testimony is otherwise introduced and is not contradicted.[3] In view of the foregoing, we cannot believe that the jury would have placed any different value on the property if Mr. Baum had been allowed to testify about these transactions. We therefore conclude that the error in restricting his testimony was not prejudicial warranting a reversal of the judgment.[4]

As to the error assigned in instructing on damages: notwithstanding the zealous efforts of counsel to torture them, we think they were such that the jury understood and applied the correct measure of damages: for the land actually taken: the fair cash market value on the date of condemnation; and for severance damages to the remainder: the difference between its fair cash market value before and after the taking.[5]

Affirmed. No costs awarded.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, J., concurs in the result.

---

3. See Hassing v. Mutual Life Ins. Co. of New York, 1945, 108 Utah 198, 159 P. 2d 117.

4. See Joseph v. W. H. Groves Latter Day Saints Hospital, 1957, 7 Utah 2d 39, 318 P.2d 330.

5. See Salt Lake County Cottonwood Sanitary Dist. v. Toone, 11 Utah 2d 232, 357 P.2d 486; see 78-34-10(3) U.C.A. 1953.