371 P.2d 552

The STATE of Utah, by and through its ROAD COMMISSION, Plaintiff and Appellant,

v.

Marion H. CHRISTENSEN and Rintha G. Christensen, his wife, Defendants and Respondents.

No. 9544.

Supreme Court of Utah.

May 17, 1962.

Rehearing Denied June 29, 1962.

A. Pratt Kesler, Atty. Gen., Robert S. Campbell, Asst. Atty. Gen., Salt Lake City, for appellant.

Morgan & Payne, Provo, for respondents.

WADE, Chief Justice.

The State as plaintiff and appellant here brought this action to condemn .54 of an acre of land belonging to defendants in American Fork, Utah, for the construction thereon of a six-lane highway. The jury awarded defendant $5,500, $1,080 thereof as compensation for the taking of the .54 acre and about which there is no question; and $4,420 severance damages, from which the State brings this appeal.

The Christensens' lands consist of two adjoining tracts on the south side of Second South Street, and about 27 acres of farm and pasture land beyond the railroad tracks and about three-quarters of a mile to the southeast. The first tract adjoins the south side of Second South Street for 100.5 feet. It extends southward from the street 388 feet. The west boundary line of this tract jogs to the west 33.5 feet, making the south half of this tract 134 feet wide. This tract contains 1.1 acre. Another smaller tract adjoins the east side of the first tract commencing about 105 feet south from Second South Street, and continuing for about 86 feet. This second tract is about 66 feet wide and it contains .24 of an acre. The Christensen home is located near the south side of Second South

Street on the north end of the first tract. There are sheds and other outbuildings on both of these two tracts of land, and the farm and pasture land has a shed thereon.

The .54 of an acre taken by the State consists of all of the south end of the first and longer tract of land. The land taken commences at the jog to the west of the west boundary line of that tract and runs from that point diagonally across that tract in a southeasterly direction. It thus left the narrow or north end of the first tract with a diagonal south boundary line, together with all of the lot to the east thereof. It also left intact the entire 27-acre farm and pasture land about three-quarters of a mile to the southwest.

Defendants claim severance damages because the taking of the south end of the first tract interfered with their joint operation of all of their three tracts as a convenient unit for their sheep business. They claim that reducing the size of the pasture and the shed facilities on the home tract makes it unsuited for lambing, shearing and pasturing of the rams and other sheep to the best advantage. They further claim that the new highway interferes with their hauling of feed, driving of sheep, and passage in general from the home tract to the farm and pasturing tract and interferes with the highest and best use of their land. They also claim to have suffered damage by the heavy traffic and loud noises from the through highway being built. There is no

doubt that there was ample evidence to support the amount of severance damages awarded, although the differences in the amount of such severance damages as testified to by the witnesses for the State and the amount testified to by the witnesses for the defendant were unusually great.

The State urges that the severance damages awarded are greatly excessive resulting from the following prejudicial errors committed during the trial: 1) The State claims that Mrs. Christensen made highly inflammatory and prejudicial statements to the jury while it was viewing the premises at the beginning of the trial. 2) It claims that defendants' counsel on cross-examination of an expert witness for the State in bad faith asked prejudicial questions concerning the amount of severance damages paid by the State or estimated by such witness, for land lying next to the west of defendants' property. We consider the foregoing points in the order above stated.

■ 1) The statements made by Mrs. Christensen in the presence of the jury were not inflammatory or prejudicial to the State's case. The statements in the affidavit of the witness for the State in regard to what Mrs. Christensen said to the jury are in marked conflict with her affidavit on that question.

The affidavit for the State recites that while the jury viewed the premises Mrs. Christensen addressed "the jury at large" saying that "it was difficult to get a full

picture of the property being acquired and that remaining at the time of the view, together with the sheep operation she and her husband conducted; that it was much prettier in the springtime than at the present time, particularly when the 'cute' little lambs were in the pasturing area." The affidavit further states that when she was cautioned that it was not permissible for her to address the jury, she replied: " * * * how was the jury to realize the extent to which she and her husband had been hurt if she didn't explain * * *." And further, that in answer to a question by a juror she "began to answer and gesture."

Mrs. Christensen made a counter-affidavit in which she said that the jury viewed the premises when they were covered with snow and were muddy; that the jury had been shown the premises by the bailiff, the attorneys for the State, and Road Department officials before defendants and their attorneys arrived; and at the time when they arrived, some of the jurors were getting back into the parked cars to leave. At that time the attorney for the State was waving his arms in the air showing the jury the premises. On the arrival of the defendants and their attorneys, the attorney for the State came over to Mrs. Christensen and they talked friendly and walked through a gate together out of the presence of the jury. She further states that in answer to questions by the attorney for the

State she pointed out the difference in the appearance of their property at that time and in the spring time when they were feeding sheep and lambs. In her affidavit she categorically denied that she addressed the jury at large and denied that the jurors were present when she talked about the premises. She further stated that while she and the attorney were talking out of the presence of the jury, a single juror came in "and hollered to ask her if there was a gateway out of the back of the property," and she answered, "yes," whereupon the attorney snapped at her and she said nothing further.

■ A number of things indicate that the State was not prejudiced by what occurred in the course of the jury's viewing the premises. a) The State's attorney and officials saw and heard all that occurred. Yet they made no move for a mistrial, nor did they request the court to instruct the jury thereon or even call the matter to the attention of the court until after the jury returned what the State considered an excessive severance damage award. From this it is clear that the claim of prejudice was made only because of the amount of the severance damages awarded. b) By refusing to grant a new trial, the trial judge showed that he considered the State had not been prejudiced. So he must have found against the State on the facts in dispute, or concluded that regardless of the facts no prejudice was shown. The trial judge, hav-

ing seen and heard the witnesses and the jury, was better able to determine the question of prejudice than we are.[1]  c) The statements which the State attributes to Mrs. Christensen were obviously true.  At most, the State's claim shows that she was emotionally upset and had strong feelings that she and her husband would have to suffer great damage.  However, there is no claim that she misinformed the jury.  So we conclude that this event shows possible irregularity but does not show prejudice.

2).  Mr. Harding, one of the State's real estate expert witnesses, opined the severance damages to the Christensens' property at only $420 as compared with $5,696 to $6,932 by defendants' witnesses.  The jury's award was $4,420 for severance damages to the Christensens' property.  This is much more than the State claims and less than defendants' witnesses testified to.

The following occurred while defendants' counsel was cross-examining State's witness, Harding:

"Q  Isn't it true, Mr. Harding, that the estate right next to this property line just to the west, that there was a severance of $3500.00 paid to that owner because of the proximity of this highway?

MR. ALDRICH: Your Honor, what has been paid or what might be paid in some other case has no bearing in this case, and it's improper.

THE COURT: I'll let him answer. Go ahead.

THE WITNESS: I don't know.

BY MR. MORGAN:

Q  Have you inquired to the west, as to how much they got for proximity of the highway to their home?

MR. ALDRICH: I have a continuing objection to all this line of testimony, because this is highly prejudicial.

THE COURT: You may.  The objection is sustained.  You may proceed.

BY MR. MORGAN:

Q  Did you appraise the property on the west that I have referred to?

A  Yes.

Q  For the State?

A  I did.

Q  What was your appraisal to the property on the west?

MR. CAMPBELL: We are going to object to this line of testimony.

THE COURT: Sustained.

BY MR. MORGAN:

Q  Was there any severance damage to this property to the west?

MR. CAMPBELL: I object to that question.

THE COURT: Sustained."

The State seeks a new trial by reason of the prejudicial effect which it claims the foregoing had on its case.  It contends

1.  See Wellman v. Noble, 12 Utah 2d 350, 366 P.2d 701.

that these questions were asked in bad faith in order to suggest severance damages of $3,500, when the defendants knew that such evidence was not admissible. The State further claims that this shows that the suggestion of severance damages paid to a neighbor is not based on fact, and that asking these questions prejudicially indicated to the jury favoritism to the next-door neighbors by the State as against the defendants.

█ A sale of land to the State for highway purposes, by agreement of the parties, to avoid a condemnation suit is a forced sale and therefore is not admissible in evidence to show the value of other similar property being condemned.[2] Further, proximity and severance damages, absent a showing of complete similarity, are dependent on the particular facts and circumstances of each case, so what the State paid as such to a neighbor would be inadmissible to show the severance and proximity damages to the property being condemned. On the other hand, cross-examination is admissible to test the good faith, knowledge, credibility and the like of a witness. The answers to the questions above quoted, especially the first one, would not have been admissible in evidence even under cross-examination; and although the witness did

not know or was not allowed to give the answers, the questions were improper. So our problem is to determine whether the asking of these questions was prejudicial to the State.

█ The State's claim that the amount of severance damages stated in the first question was made in bad faith, and not based on fact, is not strictly logical. The trial court by denying a motion for a new trial clearly indicated that he considered that the State was not prejudiced by these questions. As previously pointed out, the State did not move for a mistrial or press its claim of prejudicial error until after the verdict was returned. We overrule the trial court's decision on a motion for a new trial only if we find an abuse of its discretion.[3] We conclude that the State was not prejudiced by these erroneous questions.

There were other grounds of prejudice claimed but a careful study thereof clearly indicates that no grounds for reversal were thereby shown.

Judgment of the trial court affirmed. No costs awarded.

McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, J., dissents.

2. See State By and Through Road Commission v. Peterson, 12 Utah 2d 317, 366 P.2d 76; Southern Pacific Company v. Arthur, 10 Utah 2d 306, 352 P.2d 693; Weber Basin Water Conservancy District v. Ward, 10 Utah 2d 29, 347 P.2d 862; State By and Through Its Engineering Comm. v. Peek, 1 Utah 2d 263, 265 P.2d 630.

3. See note 1.

**230**

HENRIOD, Justice (concurring and dissenting in part).

I concur in point 1, but not in point 2.

I think the question asked on cross-examination suggesting an amount obtained for severance damages at a forced sale was improper, clearly inadmissible and most prejudicial. The main opinion concedes this, and correctly points out that its impropriety would be as objectionable on direct examination. By way of apologia, however, it condones the whole thing by saying that "The trial court by denying a motion for a new trial clearly indicated that he considered that the State was not prejudiced by these questions."

What the trial court "considered" cannot salve the wound of prejudice, nor purge its damage. Nor can the main opinion's statement provide an elixir by repeating the oft-quoted aphorism that we will "overrule the trial court's decision on a motion for a new trial only if we find an abuse of its discretion." This does not meet head-on the urgence of prejudice. It loses sight of the fact that it is the *question* itself that is objectionable and prejudicial, incurable by any balm that may be administered by an *answer,* or by what the trial court thinks about the whole affair,—any commiseration by or our reverence for the trial court's conclusion of nonprejudiciality to the contrary notwithstanding.

This writer finds it difficult to understand how, after paying homage to the trial court's discretion, it should discount it, and then support it by a condemnatory-eulogistic approbation, saying, without basis in the record, that "As previously pointed out, the State did not move for a mistrial or press its claim of prejudicial error until after the verdict was returned."

The quoted statement adds triteness to inaccuracy. The phrase had reference to point 1 of the main opinion anent the (impossible) suppression of female vocalism. This writer agreed on biological grounds, but the observation did not apply to point 2 having to do with a prejudicially-asked question. At the juncture where the questionable question was put, the plaintiff registered immediate and apparently disturbed protest. At that point the duty to take a look at prejudiciality was courtwise and counselwise. The fact that none thought of a mistrial motion, by no stretch of anyone's imagination could inter the emphatic objections made to the questions, engrained in the record.

Backbone of the main opinion's sustenance of the conclusion of non-prejudice, to the effect that "the State did not move for a mistrial or press its claim of prejudicial error until after the verdict was returned," lacks vertebrae, since 1) plaintiff did not have to demand a mistrial, but needed only to object to the question to preserve its appellate rights under the rules, which it did, and since 2) it pressed its objection long before submission of the c:    or return of the verdict, or entry of judgment.

This case should be remanded for proper hearing as to damages, applying principles as to admissibility of evidence with respect to previous forced sales and with a realistic approach to the easy approach of deciding things on a sort of kaleidoscopic interpretation of the ephemeral and elusive phrase "prejudicial error," where one side invariably thinks its employment is dandy, as a determining phrase, but which the other side invariably thinks is the employment of a flatulent design to arrive at a desired objective.