383 P.2d 917

**UTAH ROAD COMMISSION, Plaintiff and Respondent,**

v.

**J. Herbert HANSEN and Gertrude T. Hansen, his wife, Defendants and Appellants.**

**No. 9679.**

Supreme Court of Utah.

July 12, 1963.

made in his presence and hearing. See 2 Wharton's Criminal Evidence (12th Ed.) p. 166.

Ronald C. Barker, Salt Lake City, for appellant.

A. Pratt Kesler, Atty. Gen., Robert S. Campbell, Jr., Salt Lake City, for respondent.

CROCKETT, Justice.

Action in eminent domain to condemn and acquire 1.84 acres of an 18.06 acre tract of land owned by the defendants Hansen on the north side of 21st South Street between 6th and 7th West in Salt Lake City for use in widening and improving that arterial highway.

The right to acquire the property by condemnation was not questioned. The trial went forward with the defendants in

effect as plaintiffs with the burden of establishing their damages.[1] From a jury verdict awarding defendants $21,500 for the land taken and $3,400 as severance damages to the remaining land they appeal, claiming the award to be inadequate.

The Hansens have for some years operated an auto wrecking business known as the Sandy Metal Works on this tract of land. The portion taken runs the full block between 6th and 7th West alongside 21st South Street. It is considerably wider along the eastern half to accommodate an access road, which will run westward from 6th West parallel to 21st South and then turn south into 21st South about half way between 6th and 7th West Streets. The boundary between defendants' remaining property and the access road is designated as a right-of-way line, while the boundary west of the access road is designated as a limited access line with no proposed access to 21st South.

The objective of the proceeding, clearly understood and pursued by both sides in presenting their evidence, was to determine the fair market value of the land taken at the time the action was commenced. Evidence was adduced as to its present use and the reasonable prospects for its utilization in the future. The valuation was acknowledged to be upon the basis of the highest and best use to which the land could be put. The location and juxtaposition to other properties and to the highway and the access thereto were also shown. Upon the basis of this whole evidence the trial court submitted the issue of value upon the familiar and universally accepted "willing buyer-seller" test, stating that the term "market value" is the price which the land would bring between a seller who desired, but was not compelled, to sell, and a buyer who desired, but was not compelled, to buy. The issue of severance damages was also correctly tried and submitted to the jury under a proper instruction that the owner was not limited to the value of the land taken, but was entitled to "severance damages," that is, the difference in value of the remaining tract before and after the taking.

■■ In attacking the insufficiency of the damages awarded, the defendants contend that the trial court erred in refusing to permit them to prove and evaluate three separate elements of damage: the cost of removing from the premises several hundred salvage automobiles and a considerable quantity of parts; losses allegedly suffered because of forced premature sale of approximately 180 of these automobiles; and damages resulting due to loss of access from the western half of the remaining portion of their property to 21st South Street.

1. State v. Peterson, 12 Utah 2d 317, 366 P.2d 76; see 65 A.L.R. 488.

In regard to the cost of removal of the automobiles and the alleged loss because of forced sale, these observations are pertinent:

It will be noted that our statute [2] providing for the taking of property by eminent domain and the awarding of damages therefor upon which this action rests speaks in terms of real property and the damages to be awarded for its taking, but contains no express wording construable as allowing recovery for the cost of removing or disposing of personal property from the premises condemned. The question of its disposition has been before the courts many times and the majority view seems to be that, inasmuch as the condemnor takes only the realty, and acquires no interest in the personalty, it is the responsibility of the condemnee as owner to take care of his personal property if he desires to preserve it; and that consequently the expenses in connection with its removal [3] or sale are not proper to be considered as a separate element of damages to be charged against the condemnor for the taking of real property.[4] Defendants aver, however, that the particular wording of Article I, Sec. 22 of the Utah Constitution that: "Private property shall not be taken or *damaged* for public use without just compensation" requires a result different than the majority view just referred to, and urge that under State Constitutions which contain the words "or damaged" as does ours, the opposite or minority view is reached. Our research does not confirm the accuracy of their contention.

In Ballantyne Company v. City of Omaha [5] the Nebraska court was faced with the same argument now before this court. Article I, Section 21 of the Nebraska Constitution reads: "The property of no person shall be taken *or damaged* for public use without just compensation therefor." The Nebraska court held that the addition of the words "or damaged" did not change the law as previously established in Nebraska to the effect that costs of removing personal property were not compensable. Other jurisdictions with constitutional provisions similar to those of Utah and Nebraska have also followed the majority view.[6]

In support of this conclusion it should be noted that the clause upon which the de-

2. Sec. 78-34-10, U.C.A.1953.
3. Arizona State Highway Dept. v. Chun, et al., 91 Ariz. 317, 372 P.2d 324; In re Assessment for Widening Third Street in St. Paul, 176 Minn. 389, 223 N.W. 458; see also: United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L. Ed. 729; LaMesa v. Tweed and Gambrell Planing Mill, 146 Cal.App.2d 762, 304 P.2d 803; 18 Am.Jur., p. 895.

4. Cf. Wilkerson et al. v. Grand River Dam Authority, 195 Okl. 678, 161 P.2d 745.
5. 173 Neb. 229, 113 N.W.2d 486.
6. See: Kansas City Southern R. Co. v. Anderson, 88 Ark. 129, 113 S.W. 1030; St. Louis, K. N. W. R. Co. v. Knapp-Stort & Co., 160 Mo. 396, 61 S.W. 300; also 69 A.L.R.2d p. 1463.

fendants rely, that private property should not be "taken or damaged for public use" without just compensation, was in fact applied to the real estate which was taken, and the defendants have been fully compensated for it. But the cars and salvage were not themselves "taken or damaged" in any way. Defendants are in no different position than if they had voluntarily sold the condemned land for its fair market value, as the condemnation presupposes they have done. If they had thus sold their property, they obviously could not have continued to store personal property upon it, or to make any other use of it. The fact that they had personal property on the premises, of whatever nature and amount, is merely an incidental fact which they must reckon with and take care of their interests therein just as if they had made an ordinary sale of their real estate. The obligation of the State is limited to the payment of the fair value of the property taken, plus resulting damages to the remainder, and the cost of removal of personal property is not an item of damage to be separately evaluated and paid for.

To bolster their position defendants assert that they were "ordered" by the court to remove the automobiles and parts from the property, and that consequently it should have granted them damages for doing so.

This contention may have had at least some plausibility if the court had so ordered and had had the authority to do so. But scrutiny reveals that defendants have misinterpreted the order issued. It was in the alternative for the defendants to show cause why they had not removed the property or to declare whether they had abandoned it. The purpose of this action under eminent domain was simply to condemn and take the real property and that was the judgment entered. The court did not and could not have ordered the defendants to improve it or change its condition for the benefit of the State. But if defendants wanted their personal property, they, of course, had the right to take it, or to leave it to whatever consequences might befall from the State putting the land to the use for which it was taken.

■ The final contention is that the court should have allowed proof as a separate element of value for the limitation of access to 21st South Street. We are aware that in the case of Dooly Block v. Salt Lake Rapid Transit Co.[7] this court stated that an owner whose property abuts an established public street had an easement of access thereto, and we agree that where such is taken it would constitute the taking of property covered by our eminent domain statute.[8] It should be kept in mind that the

---

7. 9 Utah 31, 33 P. 229, 24 L.R.A. 610; Cf. State by State Road Commission v. Rozzelle, 101 Utah 464, 120 P.2d 276.

8. 78–34–2, U.C.A.1953.

Dooly case dealt with an established easement and whether such a right of access could exist in the absence of an established use was not considered.

In this case whatever right of access may have existed was appurtenant to the property taken and, under the instruction hereinabove referred to submitting the question of value to the jury, would necessarily have been considered as a factor increasing the award made for the land which was taken. The defendants having thus been compensated for the worth of the access that land had to the highway, are now in the position of claiming additional damages for loss of access to the highway from their remaining property. The relationship of their remaining land to 21st South is the same as if a new roadway had been constructed adjacent to their property. Thus their claim for damages on that score is comparable to an owner claiming to be damaged by the establishment of an entirely new highway alongside his property because no new easement thereto is created for his benefit. No existing easement to their remaining land having been taken, no compensation is required.[9]

Defendant's position, followed to its logical conclusion, would result in an easement attaching to practically any or every point along the boundary of a highway with their property. Such a view does not find support in reason since an easement of access contemplates a traveled way from the property to the highway.

Because of the ever-increasing volume of traffic it is essential that modern highways be designed to accommodate large numbers of motor vehicles at relatively high speeds. The desirable objective and the compelling necessity are to obtain the greatest possible efficiency combined with the highest possible degree of safety in the movement of traffic. This objective would be thwarted completely if vehicles were allowed to enter the highway practically at random, as would be the case if every abutting owner could insist on direct access. This is made clear by visualizing what would happen as tracts are divided into smaller and smaller parcels. Arising out of the necessity to properly discharge its duty of providing public highways, it is recognized that the sovereign may, under its police power to conserve the health and welfare of the people, prescribe reasonable limitations upon access to the highways.[10] Absent an established easement, all the abutting owner is entitled to is some reason-

9. State v. McDonald, 88 Ariz. 1, 352 P. 2d 343; People v. Thomas, 108 Cal. App.2d 832, 239 P.2d 914; State Highway Comm. v. Burk, 200 Or. 211, 265 P.2d 783; State v. Calkins, 50 Wash. 2d 716, 314 P.2d 449.

10. See Highway Compensation by Robert S. Campbell, Jr, Vol. 8, page 12, Utah Law Review (1962).

able means of access to the highways the same · as all other members of the public. The trial court wisely so instructed the jury and gave them a special interrogatory as to whether the limitation of access resulting to the defendants was unreasonable, to which the jury answered that it was not

 The assertion, which may well be true, that the property as a whole would have a greater value with unlimited access from 21st South, does not provide a basis for compensation. It is settled in this jurisdiction that the landowner has no property right in the flow of traffic on a public highway.[11] Defendants' additional claim that limitation of access will lessen the value of their remaining land should they desire to divide and sell it in smaller pieces is. likewise without merit. The valuation must be on the basis of what a willing purchaser would pay now and not what a number of purchasers might be induced to pay in the future[12] for the land in smaller parcels.

In view of the foregoing discussion it appears that the defendants were not deprived of their right of fully presenting to the jury the legitimate aspects of damages for the taking of their property; and the

evaluation arrived . at was well within the appraisals shown by the evidence.

The judgment is sustained. No costs awarded.

(All emphasis ours.)

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.

---

11. Weber Basin Water Conservancy District v. Hislop, 12 Utah 2d 64, 362 P.2d 580; Springville Banking Co. v. Barton, 10 Utah 2d 100, 349 P.2d 157; State v. Rozzelle, note 7 above.

12. State v. Tedesco, 4 Utah 2d 248, 291 P.2d 1028.