452 P.2d 548

**STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Appellant,**

**v.**

**Rowan W. WILLIAMS et al., J. S. Prestwich, M.D., and Leatha Graff Prestwich, his wife, Defendants and Respondents.**

**No. 11263.**

Supreme Court of Utah.

March 27, 1969.

---

302

Phil L. Hensen, Atty. Gen., Salt Lake City, Patrick H. Fenton, Special Asst. Atty. Gen., Cedar City, for plaintiff and appellant.

Robert S. Campbell, Jr., Stewart M. Hanson, Jr., of Parsons, Behle, Evans & Latimer, Salt Lake City, for defendants and respondents.

CALLISTER, Justice.

This is an appeal by the State of a condemnation award of $34,525 (market value of 50.07 acres condemned, $7,850.50,

and severance damages, $26,674.50) to the defendant-landowners, the Prestwiches, upon the ground that the trial court erred in submitting the issue of severance damages to the jury.

Defendants owned a cattle ranch consisting of approximately 1800 acres, situated west and north of Kanarraville, Utah. Their property consisted of three noncontiguous parcels identified as the north, center, and south fields, which the evidence indicated were developed as a balanced ranching property composed of meadow, irrigated and dry cultivated acreage and grazing land. Defendants raised beef cattle which they continually rotated from field to field according to the growing season and weather. Prior to condemnation, a north-south county road provided defendants with access from one field to another. The State condemned a total of approximately 50 acres throughout the three fields for the construction of Interstate Freeway I–15.

In the north and center fields, the taking bisected the parcels, leaving isolated to the west of the freeway 185 acres and 300 acres respectively. In the south field, the land along the western boundary was taken which destroyed the defendants' former access to the north-south county road. After condemnation, there was no means provided to cross from one side of the north field to the other. In the center field at the northern end an arched overpass was constructed which connected to a county road providing access to the western portion of the field. In the south field the loss of access to the county road compelled the owners to go into the town of Kanarraville to reach the other two fields.

Defendants' expert testimonial evidence indicated that the highest and best use of the total property was as a beef-cow unit and that the total unit was more valuable to a prospective purchaser than the separate tracts. After condemnation, communication back and forth for cropping operations and the movement of livestock was seriously impaired. There was substantial difficulty encountered in the rotation and irrigation of crops in the north and center fields. To traverse from the east to the west side of the north field the landowner had to leave his property and travel 3.5 miles down a frontage road, cross an overpass, and then return to his property by another frontage road. The owners experienced difficulties in the east-west movement of cattle since their sole access to the west was over an arched overpass, and range cattle cannot practically be driven over such a structure. The owners found that the only effective method of transferring cattle from one side of the field to the other was by trucking them. The landowners also had to haul by truck feed and water for the cattle from one side of the center field to the other.

The location of the property as a farming and ranching operation after condemnation was less desirable with a consequent decrease in value. The diminution in value of the property was directly attributable to the barrier created by the freeway which segmented the fields. The willing buyer, after construction of the freeway, would not pay the same price as formerly because of the access problems encountered in the operation of the ranch.

■ The State quite properly does not challenge the principle that an award of severance damages to the remaining property is appropriate where two or more parcels of land, although not contiguous, are used as constituent parts of a single economic unit.[1]

The State primarily predicates its claim of error on the ground that defendants failed to meet the burden of proof required to entitle them to severance damages. Specifically, the State asserts that there were 180 acres of land west of the freeway for sale a few months after service of summons and that defendants made no effort to mitigate their damages by purchase of replacement land; therefore, defendants are precluded from introducing any evidence of severance damages.

The State advanced a similar argument in State By and Through Road Commission v. Howes[2] wherein it contended that a landowner must prove a negative, that he could not with reasonable diligence acquire a new access, before he could prove severance damages for loss of access. This court's response to such a contention was as follows:

> We hold that in a condemnation action it is the condemnee's burden to prove severance damage, but that before doing so he does not generally have the burden of first showing that such damage, if any, could not be minimized or mitigated.

■ The foregoing is of particular applicability in the instant action. The trial court properly overruled the State's objection and accepted defense counsel's argument that the severance damage was occasioned by the isolation of ground on one side of the public development and not from the shrinkage of the farm unit so that the purchase of replacement land would not cure the damage and place the owner in substantially the same position prior to the taking.[3] There is a certain irony in

---

1. United States v. Waymire (C.A.10th 1953), 202 F.2d 550, 554, grazing land noncontiguous to bottom or meadow land, both parcels were part of a balanced ranch; Arkansas State Highway Comm. v. Vaught, 240 Ark. 682, 401 S.W.2d 553 (1966), two noncontiguous tracts used as a cattle farm; 4 Nichols on Eminent Domain (3d Ed.), Sec. 14.31(1).
2. 20 Utah 2d 246, 436 P.2d 803 (1968).
3. See Southern Pacific Company v. Arthur, 10 Utah 2d 306, 312, 352 P.2d 693 (1960), wherein it was stated that evidence of the availability of other lands

connection with the State's argument as to the alleged replacement land; first, the available parcels were west of the freeway, which would have compounded defendants' problem of isolation of its western property from the ranching unit. Secondly, the State's expert witness in testifying as to values based on comparable sales had to rely on transactions in areas as far as one hundred miles away because he could not locate any comparable local sales.

■ The State contends further that the trial court erred in submitting the issue of severance damage to the jury because at no time during the course of the trial was there testimony concerning the value of the total economic unit both prior and subsequent to the taking.

The cardinal and well-recognized rule as to the measure of damages to property not actually taken but affected by condemnation is the difference in market value of the property before and after the taking. * * *[4]

The State has taken a hypertechnical approach to this matter and argues that there is one appropriate incantation to invoke the magic severance formula. This trial was conducted over a four-day period,

and the record reveals extensive testimony by the defendants' two expert witnesses, who clearly disclosed the basis which they utilized to derive the value of the severance damages; their method was in accord with Sec. 78–34–10(2), U.C.A. 1953. There is no basis in fact to assert that the jury did not understand and apply the correct measure for severance damage to the remainder, the difference between the fair market value before and after the taking.[5]

■ Finally, the State contends that the jury was permitted to speculate on the value of certain undeveloped irrigation water. In 1956, defendants filed an application to drill a well and appropriate water for the irrigation of 260 acres in the north field. After certain proceedings were conducted, their application was designated for approval in August, 1963, four months prior to the service of summons in this condemnation action. The State Engineer, Hubert Lambert, testified that in his experience only 1% of all applications designated for approval by the State Engineer were thereafter disapproved. Defendants' application was formally approved in April, 1964. Defendants' expert witnesses appraised this dry cultivated land on the basis of its having a *potential* irrigated crop,

would be immaterial where the facts indicated that the damage to the remaining lands cannot be mitigated by obtaining other lands in other places which could serve in the unified operation the same purpose as the lands taken.

4. Salt Lake County Cottonwood Sanitary Dist. v. Toone, 11 Utah 2d 232, 233, 357 P.2d 486, 488 (1960).
5. State By and Through Road Commission v. Peterson, 12 Utah 2d 317, 321, 366 P.2d 76 (1961).

since the typical buyer would give consideration to such a factor. The potential water development upon the land was not, under the facts revealed in this case, speculative in nature.

The judgment of the trial court is affirmed.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.